# NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY *v.* UNITED STATES.

### ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 57.   Argued December 14, 15, 16, 1908.—Decided February 23, 1909.

Congress can impute to a corporation the commission of certain criminal offenses and subject it to criminal prosecution therefor.

In actions for tort a corporation may be held responsible for damages for the acts of its agent within the scope of his employment, *Lake Shore & Michigan Southern R. R.* v. *Prentice,* 147 U. S. 101, even if done wantonly, recklessly or against the express orders of the principal.

A corporation is responsible for acts not within its agent's powers strictly construed but assumed to be done by him when employing authorized powers, and in such a case no written authority under seal is necessary. *Washington Gas Light Co.* v. *Lansden,* 172 U. S. 534.

The act of an agent exercising the authority of a corporation which is a common carrier to make rates for transportation may be controlled, in the interest of public policy, by imputing his act to the carrier itself and imposing penalties therefor upon the carrier.

While corporations cannot commit some crimes, they can commit crimes which consist in purposely doing things prohibited by statute, and in such case they can be charged with knowledge of acts of their agents who act within the authority conferred upon them.

Congress has power to so regulate interstate commerce as to secure equal rights to all engaged therein, and the act of February 19, 1903, c. 708, 32 Stat. 847, known as the Elkins act, is not unconstitutional because it imputes to the corporation, and makes it criminally responsible for, acts violative of the Interstate Commerce act done by its agent.

The court will recognize that the greater part of interstate commerce is conducted by corporations, and it will not relieve them from punishment because at one time there was a doctrine that corporations could not commit crimes.

Even if a statute relating both to individuals and corporations deprived an individual of the presumption of innocence and made him responsible for the acts of another, the question of the constitutionality of such statute on that ground cannot be raised by a corporation; and where. as in the case of the Elkins act, there is no doubt that

Congress would have enacted the statute as to corporations, even if it could not as to individuals, it is valid as to corporations. *Berea College* v. *Kentucky*, 211 U. S. 45.

Every statute is to be construed so as to maintain its constitutionality if possible.

The purpose of the Elkins act being to make the act of the agent the act of the corporation, and to include both within its restrictions, there is no misjoinder in including both the agent and the corporation in one indictment.

An indictment is sufficient if it specifically states the elements of the offense charged with sufficient particularity to fully advise the defendant thereof and so as to be pleaded in bar of any subsequent prosecution for the same offense. § 1025, Rev. Stat.

Under the Interstate Commerce act where a shipper pays the legal rate on numerous shipments and at intervals receives a rebate from the carrier there is a separate and complete offense on each payment and not one continuous offense, although all the payments were made under one agreement.

*Quære*, and not decided, what constitute separate offenses where numerous shipments are made and paid for at less than the published rates.

An instruction which simply amounts to permitting the jury to consider circumstances connected with the non-appearance of a witness and the non-production of books *held*, in this case, not to have been prejudicial error.

THE facts are stated in the opinion.

*Mr. Austen G. Fox* and *Mr. John D. Lindsay*, with whom *Mr. Albert H. Harris* was on the brief, for plaintiff in error:

Congress cannot under the Constitution impute to plaintiff in error the commission of a criminal offense and subject it to criminal prosecution and punishment by reason of the matters set forth in the indictment. To take the money of a corporation for crime committed by the individuals who control it, is to take the property of every stockholder. It amounts to punishing the innocent for the guilty. *State* v. *Great Works Mill Co.*, 20 Maine, 41; 2 Jurid. Soc. Papers, 31.

If correctly interpreted by the court below, the fourth clause of § 1 of the Elkins act declaring that the act, omission or fail-

ure of any officer, agent or other person acting for or employed by any common carrier, acting within the scope of his employment, shall be deemed to be the act of such carrier, as well as of that person, is unconstitutional. If misinterpreted by the court below the case was submitted to the jury upon a fundamentally erroneous theory. This applies in terms to any carrier engaged in interstate commerce, and, as construed by the court below, extends the principle of *respondeat superior* to criminal law, destroys the presumption of innocence as to all interstate carriers, and erects in its place a conclusive presumption of guilt against the carrier, based upon any unlawful act of any agent, although in excess of his actual authority.

The trial court admitted that a statute of this nature would probably be invalid in the case of individual carriers, but held it constitutional in the case of corporate carriers. This ruling disregarded the principle that a statute which is unconstitutional in part is unconstitutional as a whole, if the valid and invalid parts of the statute are inseparable. This court has refused to supply qualifications which the legislature has failed to express. *United States* v. *Fox,* 95 U. S. 670; *Employers' Liability Cases,* 207 U. S. 463. In the present case there is, of course, no possibility of such a severance. Moreover, even if the act had been directed against corporations alone, the presumption of innocence shields a corporation to the same extent that it shields an individual. *Inter. Com. Com.* v. *C. G. W. Ry.,* 209 U. S. 108, 119. Equal protection of the laws as well as due process of law is assured to corporations and individuals alike. *Gulf, C. & S. F. Ry. Co.* v. *Ellis,* 165 U. S. 150. The rulings of the trial court involved the absolute denial of these rights. The conclusion follows that if the language of the statute compelled the rulings, the statute is unconstitutional, and, if the statute did not warrant the rulings, then the judgment should be reversed for the erroneous construction of the statute. Clark & Marshall, Law of Crimes (2d ed.), § 194 (i), p. 267; *Morse* v. *State,* 6 Connecticut, 9; *Armour Packing Co.* v. *United States,* 209 U. S. 56; *Peck* v. *Heurich,* 167 U. S. 624, 629.

The presumption of innocence prevails alike whether the defendant in a criminal prosecution be a corporation or an individual. *Int. Com. Com.* v. *C. G. W. Ry. Co.*, 209 U. S. 108, 119.

One is not liable, *criminaliter*, for the act of his agent, even though the act be done in the course, or even within the general scope, of his lawful employment, in the sense in which we use that phrase in applying, *civiliter*, the doctrine of *respondeat superior.* The presumption of innocence excludes such a criminal responsibility. *Queen* v. *Holbrook*, L. R. 3 Q. B. D. 60, 63; *Reg.* v. *Ramsay*, 48 Law T. Rep. N. S. 733, 744; *People* v. *McLaughlin*, 150 N. Y. 365, 391; *United States* v. *Halberstadt*, Gilp. 262, 270; *Parsons* v. *Armor*, 3 Pet. 428; *McDonald* v. *Hearst*, 95 Fed. Rep. 656, 658, 660; *United States v. Gooding*, 12 Wheat. 460, 469; *Wynehamer* v. *People*, 13 N. Y. 378; *Interstate Com. Com.* v. *Chicago Great Western Ry. Co.*, 209 U. S. 108; *Cummings* v. *Missouri*, 4 Wall. 277, 328; *Davis* v. *United States*, 160 U. S. 469; *State* v. *Devine*, 98 N. Car. 778; *Sullivan* v. *County of Oneida*, 61 Illinois, 242, 249; *State* v. *B. & O. R. R. Co.*, 15 W. Va. 362, 387; *Satterfield* v. *W. U. Tel. Co.*, 23 Ill. App. 446; *Commonwealth* v. *Putnam*, 4 Gray, 16; *Stockwell* v. *United States*, 13 Wall. 531; *Schreiber* v. *Sharpless*, 6 Fed. Rep. 175.

The Elkins act as construed below undertakes to determine a question that belongs to the courts.

Whether facts upon which rights depend are true or false is an inquiry for the courts to make, under legal forms. It belongs to the judicial department of the Government. *Birdsong* v. *Erooks*, 7 Georgia, 88, 92, cited in 2 Wigmore, Evid., § 1353, n. 2; *Ziegler* v. *S. & N. Ala. R. R. Co.*, 58 Alabama, 594; *Hoke* v. *Henderson*, 4 Dev. Law, 1, 15; *Bielenberg* v. *Montana U. Ry. Co.*, 8 Montana, 271, 277.

This clause of the Elkins act would not have been valid if limited to corporations, and this court may not read into the act an exception of a class constitutionally exempted so as to save what remains. *Gulf, Col. & S. F. Ry. Co.* v. *Ellis*, 150 U. S.

150; *Seaboard Air Line* v. *Seegers*, 207 U. S. 73, 77; *Cotting* v. *Kansas City Stock Yards*, 183 U. S. 79, 108; *Boyd* v. *United States*, 116 U. S. 616, 635.

Classification based upon the dangerous character of the business is constitutional, but classification based merely on the character of the employer is not. *L. & N. R. R. Co.* v. *R. R. Comm. of Tenn.*, 19 Fed. Rep. 679; *Bedford Quarries* v. *Bough*, 168 Indiana, 671; *Ballard* v. *Oil Co.*, 81 Mississippi, 507; *Niagara Ins. Co.* v. *Cornell*, 110 Fed. Rep. 816, 825; *Duncan* v. *Missouri*, 152 U. S. 377; *Barbier* v. *Connolly Pipe Co.*, 113 U. S. 27, 31; *Monongahela Nav. Co.* v. *United States*, 148 U. S. 312, 337.

If it can be lawfully done, the duty of the courts is to construe the statute so as to render it constitutional, but this may be done only where it is plain that Congress would have enacted the legislation with the unconstitutional provisions eliminated. The court will not attempt to save a statute by making it "only partial in its operation." *Employers' Liability Cases*, 207 U. S. 497. See also *United States* v. *Reese*, 92 U. S. 214; *United States* v. *Harris*, 106 U. S. 629; *United States* v. *Ju Toy*, 198 U. S. 253, 262; *Baldwin* v. *Franks*, 120 U. S. 678, 685, 690; *Poindexter* v. *Greenhow*, 114 U. S. 270, 304; *Trade-Mark Cases*, 100 U. S. 82; *Allen* v. *Louisiana*, 103 U. S. 142; *Sprague* v. *Thompson*, 118 U. S. 90; *Pollock* v. *Farmers' L. & T. Co.*, 158 U. S. 636.

The indictment is bad for the misjoinder as defendants of the plaintiff in error and its agents. Archbold's Cr. Pl. (22d ed.) 78; Wharton, Cr. Pl. & Pr. (9th ed.) 307; Nathaniel Lindley, 2 Jurid. Soc. Papers, 31; Morawetz, Priv. Corp., §§ 732–733; *People* v. *Clark*, 8 N. Y. C. R. 179, 215.

If the Elkins act permits the joinder under consideration, it is to that extent unconstitutional. *United States* v. *McKee*, 4 Dillon, 128; *Goffey* v. *United States*, 116 U. S. 436, 445; *United States* v. *One Distillery*, 43 Fed. Rep. 846; *S. C.*, 174 U. S. 149, 152; *United States* v. *Olsen*, 57 Fed. Rep. 579, 586.

The demurrer should have been sustained and the motions

to quash and in arrest of judgment granted, because of the substantial and structural defects of the indictment.

The acts described and set forth in the indictment do not constitute a crime, since it is not averred that by reason of the giving of the alleged rebates, any advantage was given or discrimination practiced. *Gridley* v. *Northwestern Life Ins. Co.*, 14 Blatch. 107; *United States* v. *Wiltberger*, 5 Wheat. 574, 576; *Armour Packing Co.* v. *United States*, 209 U. S. 56; *Interstate Comm.* v. *Ala. Mid. Ry.*, 168 U. S. 144, 166.

Nor does the indictment charge any other violation, either of the Elkins act, or the Interstate Commerce act.

The allegations of the indictment, and of each of the counts, are so ambiguous and indefinite as to make it uncertain what is the exact offense or offenses intended to be charged.

The facts set forth in the indictment and established by the evidence constituted but a single criminal transaction, and but a single penalty should have been imposed. *In re Snow*, 120 U. S. 275; *In re Nielson*, 131 U. S. 176; *Regina* v. *Firth*, L. R. I. C. C. 72; *S. C.*, 11 Cox, C. C. 234.

The principle underlying the rule which forbids the recovery for aggregated penalties under a penal statute unless the language of the statute clearly requires it, is peculiarly applicable to strictly criminal prosecutions. *State* v. *Cooper*, 13 N. J. L. 361; *State* v. *Commissioners*, 2 Murphy (N. C. ), 371.

The Elkins act, so far from authorizing the splitting up of the transaction upon which the indictment is based into separate offenses, impliedly forbids it. *United States* v. *B. & A. R. Co.*, 15 Fed. Rep. 209; *United States* v. *St. L. & S. F. R. Co.*, 107 Fed. Rep. 870.

*Mr. Henry L. Stimson*, United States Attorney, with whom *The Attorney General* and *Mr. Assistant Attorney General Ellis* were on the brief, for defendant in error:

Congress has power, in the exercise of its constitutional function of regulating commerce, to enact laws which subject corporations to criminal prosecution and punishment. *Berea*

*College* v. *Commonwealth*, 211 U. S. 45; *Armour Packing Co.* v. *United States*, 209 U. S. 56; *Swift & Co.* v. *United States*, 209 U. S. 56; *C., B. & Q. Ry. Co.* v. *United States*, 209 U. S. 90; *Great Northern Railway Co.* v. *United States*, 208 U. S. 452; *Eastern Dredging Co.* v. *United States* and *Bay State Dredging Co.* v. *United States*, 206 U. S. 246; *Union Bridge Co.* v. *United States*, 204 U. S. 364; *Hackfeld & Co.* v. *United States*, 197 U. S. 442; *State* v. *Morris Ry. Co.*, 23 N. J. Law, 360 (creating a nuisance in erecting and building a public highway); *State* v. *Passaic Co. Society*, 54 N. J. Law, 260 (keeping a disorderly house); *United States* v. *Kelso*, 86 Fed. Rep. 304 (violation of Eight-Hour Law); *United States* v. *Alaska Packers' Association*, 1 Alaska, 217 (taking salmon unlawfully); *The State* v. *The B. & O. R. R. Co.*, 15 W. Va. 362 (Sabbath breaking); *Commonwealth* v. *Pulaski Association*, 92 Kentucky, 197 (permitting gaming on its fair grounds); *State* v. *Atchison*, 3 Lea (Tenn.), 729 (criminal libel); *State* v. *Nat. Bank*, 2 S. Dak. 568 (taking usurious rates of interest); *United States* v. *Van Schaick*, 134 Fed. Rep. 592, 602 (homicide, occasioned by an inadequate supply of life preservers); *United States* v. *McAndrews & Forbes Co.*, 149 Fed. Rep. 836 (violating Sherman Anti-Trust Law against conspiracy in restraint of trade); *United States* v. *New York Herald Co.*, 159 Fed. Rep. 296 (sending obscene matter through the mail).

The case at bar involves the constitutionality of the last paragraph of § 1 of the Elkins Law only in so far as it applies to corporate carriers. *Berea College* v. *Commonwealth*, 211 U. S. 45.

As a matter of fact, this paragraph of the Elkins Law does not apply to individual carriers. See Report of Interstate Com. Comm'n of January 17, 1902, also 6th Ann. Rep. Int. Com. Com. (1892) 39; 7th Ann. Rep. Int. Com. Com. (1893) 78; 9th Ann. Rep. Int. Com. Com. (1895) 23; 10th Ann. Rep. Int. Com. Com. (1896) 115.

In any event, the first paragraph of the Elkins Law which contains similar provisions, and provisions upon which the

judge's rulings could be sustained, is expressly limited to "corporation common carriers."

The so-called clause 4, § 1 of the Elkins act which declares that in construing and enforcing the provisions of that section, "the act, omission, or failure of any officer, agent or other person acting for or employed by any common carrier acting within the scope of his employment shall in every case be also deemed to be the act, omission or failure of such carrier as well as that of the person," is not only constitutional but is merely the statutory enactment of a rule of law already applied by this court in establishing liability of a corporation for the willful wrong of its agents. *Field* v. *Barber Asphalt Pav. Co.*, 194 U. S. 618, 621; *Atchison Co.* v. *Matthews*, 174 U. S. 96, 104; *Dow* v. *Beidelman*, 125 U. S. 680; *Michigan Central R. R. Co.* v. *Powers*, 201 U. S. 245 (sustaining a tax statute which treated as a separate class all railroad corporate property for purposes of taxation); see also *Metropolitan Street Railway Co.* v. *New York*, 199 U. S. 1, 47; *Lake Shore & Michigan Southern Railway Co.* v. *Prentice*, 147 U. S. 101, 109–111; see also *Denver & Rio Grande Railway* v. *Harris*, 122 U. S. 597; *Armour Packing Co.* v. *United States*, 209 U. S. 56, 85; see also *Eastern Dredging Co.* v. *United States*, 206 U. S. 246, 257.

The defendants were properly joined in the indictment, and the Elkins Law permitting such joinder is constitutional. *United States* v. *McGinnis*, 26 Fed. Cas. No. 15,678; *State* v. *Lehman*, 182 Missouri, 424 (with full collection of authorities); 22 Cyc. 373; *United States* v. *MacAndrews & Forbes Co.*, 149 Fed. Rep. 823, 832, 833; *State* v. *Atchison*, 3 Lea (Tenn.), 729; *Banner Pub. Co.* v. *State*, 16 Lea, 176; *People* v. *Detroit White Lead Works*, 82 Michigan, 471; *Overland Cotton Mill* v. *People*, 32 Colorado, 263; Thompson on Corporations, § 4495; *Hale* v. *Henkel*, 201 U. S. 43.

The whole argument of the plaintiff in error is based upon doctrines which have been entirely outgrown by the development of the modern corporation and have long been obsolete. *Salt Lake City* v. *Hollister*, 118 U. S. 256, 259; see also *Good-*

*speed* v. *The East Haddon Bank,* 22 Connecticut, 530, 536; *Philadelphia &c. R. R. Co.* v. *Quigley,* 21 Howard, 202.

MR. JUSTICE DAY delivered the opinion of the court.

This is a writ of error to the Circuit Court of the United States for the Southern District of New York, sued out by the New York Central and Hudson River Railroad Company, plaintiff in error. In the Circuit Court the railroad company and Fred L. Pomeroy, its assistant traffic manager, were convicted for the payment of rebates to the American Sugar Refining Company and others, upon shipments of sugar from the city of New York to the city of Detroit, Michigan. The indictment was upon seven counts and was returned against the company, its general traffic manager and its assistant traffic manager. The first count, covering the offering of a rebate, was withdrawn from the jury by the district attorney, and it is unnecessary to consider it. The second count charges the making and publishing of a through tariff rate upon sugar by certain railroad companies, including the plaintiff in error, fixing the rate at twenty-three cents per 100 pounds from New York city to Detroit, and charges the railroad company's general traffic manager and assistant traffic manager with entering into an unlawful agreement and arrangement with the shippers, the American Sugar Refining Company of New York and the American Sugar Refining Company of New Jersey, and the consignees of the sugar, W. H. Edgar & Son, of Detroit, whereby it was agreed that for sugar shipped over the line, the full tariff rate being paid thereon, the railroad company should give a rebate of five cents for each 100 pounds. This count charges that during the months of April and May, 1904, shipments were made under this agreement and the regular tariff rates paid thereon. On July 14 of that year a claim for a rebate in the sum of $1,524.99 was presented by the agents of the shipper and consignees and paid on the thirty-first day of August to Lowell M. Palmer, agent of the sugar company, for the benefit of the shippers and

consignees.  In each of the counts, except the sixth, the lawful rate is charged to have been 23 cents per 100 pounds.  During the month of June, 1904, the same was reduced to 21 cents per 100 pounds, and the rebate agreed to and paid being 3 cents per 100 pounds.  The second count covers the shipments of April and May, 1904; the third count, the shipments for July and August, 1904; the fourth for September, 1904; the fifth for October, 1904; the sixth for June, 1904, and the seventh for April and May, 1904.  In each of these counts there is an allegation of the payment of the published rate, the presentation of the claim for the rebate, and the statement of a specific sum allowed and paid on account thereof.

Upon the trial there was a conviction upon all of the six counts, two to seven inclusive.  The assistant traffic manager was sentenced to pay a fine of $1,000 upon each of the counts; the present plaintiff in error to pay a fine of $18,000 on each count, making a fine of $108,000 in all.

The facts are practically undisputed.  They are mainly established by stipulation, or by letters passing between the traffic managers and the agent of the sugar refining companies.  It was shown that the established, filed and published rate between New York and Detroit was 23 cents per 100 pounds on sugar, except during the month of June, 1904, when it was 21 cents per 100 pounds.

The sugar refining companies were engaged in selling and shipping their products in Brooklyn and Jersey City, and W. H. Edgar & Son were engaged in business in Detroit, Michigan, where they were dealers in sugar.  By letters between Palmer, in charge of the traffic of the sugar refining companies and of procuring rates for the shipment of sugar, and the general and assistant traffic managers of the railroad company, it was agreed that Edgar & Son should receive a rate of 18 cents per 100 pounds from New York to Detroit.  It is unnecessary to quote from these letters, from which it is abundantly established that this concession was given to Edgar & Son to prevent them from resorting to transportation by the water route between New

York and Detroit, thereby depriving the roads interested of the business, and to assist Edgar & Son in meeting the severe competition with other shippers and dealers. The shipments were made accordingly and claims of rebate made on the basis of a reduction of five cents a hundred pounds from the published rates. These claims were sent to the assistant freight traffic manager of the railroad company by Palmer, the agent of the sugar companies, and then sent to one Wilson, the general manager of the New York Central and Fast Freight Lines of Buffalo, New York. Wilson returned to the assistant traffic manager of the railroad company a cashier's draft for the amount of the claim. This draft was then sent to the agent of the sugar companies and his receipt taken. It was stipulated that these drafts were ultimately paid from the funds of the railroad company.

Numerous objections and exceptions were taken at every stage of the trial to the validity of the indictment and the proceedings thereunder. The principal attack in this court is upon the constitutional validity of certain features of the Elkins act. 32 Stat. 847. That act, among other things, provides:

"(1) That anything done or omitted to be done by a corporation common carrier subject to the act to regulate commerce, and the acts amendatory thereof, which, if done or omitted to be done by any director or officer thereof, or any receiver, trustee, lessee, agent or person acting for or employed by such corporation, would constitute a misdemeanor under said acts, or under this act, shall also be held to be a misdemeanor committed by such corporation, and upon conviction thereof it shall be subject to like penalties as are prescribed in said acts, or by this act, with reference to such persons, except as such penalties are herein changed.

      *       *       *.       *       *       *       *       *

"In construing and enforcing the provisions of this section, the act, omission or failure of any officer, agent or other person acting for or employed by any common carrier, acting within the scope of his employment, shall in every case be also deemed

to be the act, omission or failure of such carrier, as well as of that person."

It is contended that these provisions of the law are unconstitutional because Congress has no authority to impute to a corporation the commission of criminal offenses, or to subject a corporation to a criminal prosecution by reason of the things charged. The argument is that to thus punish the corporation is in reality to punish the innocent stockholders, and to deprive them of their property without opportunity to be heard, consequently without due process of law. And it is further contended that these provisions of the statute deprive the corporation of the presumption of innocence, a presumption which is part of due process in criminal prosecutions. It is urged that as there is no authority shown by the board of directors or the stockholders for the criminal acts of the agents of the company, in contracting for and giving rebates, they could not be lawfully charged against the corporation. As no action of the board of directors could legally authorize a crime, and as indeed the stockholders could not do so, the arguments come to this: that owing to the nature and character of its organization and the extent of its power and authority, a corporation cannot commit a crime of the nature charged in this case.

Some of the earlier writers on common law held the law to be that a corporation could not commit a crime. It is said to have been held by Lord Chief Justice Holt (*Anonymous*, 12 Modern, 559) that "a corporation is not indictable, although the particular members of it are." In Blackstone's Commentaries, chapter 18, § 12, we find it stated: "A corporation cannot commit treason, or felony, or other crime in its corporate capacity, though its members may in their distinct individual capacities." The modern authority, universally, so far as we know, is the other way. In considering the subject, Bishop's New Criminal Law, § 417, devotes a chapter to the capacity of corporations to commit crime, and states the law to be: "Since a corporation acts by its officers and agents their purposes, motives, and intent are just as much those of the corporation as are the

things done. If, for example, the invisible, intangible essence of air, which we term a corporation, can level mountains, fill up valleys, lay down iron tracks, and run railroad cars on them, it can intend to do it, and can act therein as well viciously as virtuously." Without citing the state cases holding the same view, we may note *Telegram Newspaper Company* v. *Commonwealth*, 172 Massachusetts, 294, in which it was held that a corporation was subject to punishment for criminal contempt, and the court, speaking by Mr. Chief Justice Field, said: "We think that a corporation may be liable criminally for certain offenses of which a specific intent may be a necessary element. There is no more difficulty in imputing to a corporation a specific intent in criminal proceedings than in civil. A corporation cannot be arrested and imprisoned in either civil or criminal proceedings, but its property may be taken either as compensation for a private wrong or as punishment for a public wrong." It is held in England that corporations may be criminally prosecuted for acts of misfeasance as well as nonfeasance. *Queen* v. *Great North of England Railway Company*, 9 Queen's Bench, 315.

It is now well established that in actions for tort the corporation may be held responsible for damages for the acts of its agent within the scope of his employment. *Lake Shore & Michigan Southern R. R.* v. *Prentice*, 147 U. S. 101, 109, 111.

And this is the rule when the act is done by the agent in the course of his employment, although done wantonly or recklessly or against the express orders of the principal. In such cases the liability is not imputed because the principal actually participates in the malice or fraud, but because the act is done for the benefit of the principal, while the agent is acting within the scope of his employment in the business of the principal, and justice requires that the latter shall be held responsible for damages to the individual who has suffered by such conduct. *Lothrop* v. *Adams*, 133 Massachusetts, 471.

A corporation is held responsible for acts not within the agent's corporate powers strictly construed, but which the

agent has assumed to perform for the corporation when employing the corporate powers actually authorized, and in such cases there need be no written authority under seal or vote of the corporation in order to constitute the agency or to authorize the act. *Washington Gaslight Co.* v. *Lansden*, 172 U. S. 534, 544.

In this case we are to consider the criminal responsibility of a corporation for an act done while an authorized agent of the company is exercising the authority conferred upon him. It was admitted by the defendant at the trial that at the time mentioned in the indictment the general freight traffic manager and the assistant freight traffic manager were authorized to establish rates at which freight should be carried over the line of the New York Central and Hudson River Company, and were authorized to unite with other companies in the establishing, filing and publishing of through rates, including the through rate or rates between New York and Detroit referred to in the indictment. Thus the subject-matter of making and fixing rates was within the scope of the authority and employment of the agents of the company, whose acts in this connection are sought to be charged upon the company. Thus clothed with authority, the agents were bound to respect the regulation of interstate commerce enacted by Congress, requiring the filing and publication of rates and punishing departures therefrom. Applying the principle governing civil liability, we go only a step farther in holding that the act of the agent, while exercising the authority delegated to him to make rates for transportation, may be controlled, in the interest of public policy, by imputing his act to his employer and imposing penalties upon the corporation for which he is acting in the premises.

It is true that there are some crimes, which in their nature cannot be committed by corporations. But there is a large class of offenses, of which rebating under the Federal statutes is one, wherein the crime consists in purposely doing the things prohibited by statute. In that class of crimes we see no good reason why corporations may not be held responsible for and

charged with the knowledge and purposes of their agents, acting within the authority conferred upon them.    2 Morawetz on Corporations, § 733; Green's Brice on Ultra Vires, 366.    If it were not so, many offenses might go unpunished and acts be committed in violation of law, where, as in the present case, the statute requires all persons, corporate or private, to refrain from certain practices forbidden in the interest of public policy.

It is a part of the public history of the times that statutes against rebates could not be effectually enforced so long as individuals only were subject to punishment for violation of the law, when the giving of rebates or concessions enured to the benefit of the corporations of which the individuals were but the instruments.    This situation, developed in more than one report of the Interstate Commerce Commission, was no doubt influential in bringing about the enactment of the Elkins Law, making corporations criminally liable.

This statute does not embrace things impossible to be done by a corporation; its objects are to prevent favoritism, and to secure equal rights to all in interstate transportation, and one legal rate, to be published and posted and accessible to all alike. *New Haven Railroad Company* v. *Interstate Commerce Commission*, 200 U. S. 399; *Armour Packing Co.* v. *United States*, 209 U. S. 56.

We see no valid objection in law, and every reason in public policy, why the corporation which profits by the transaction, and can only act through its agents and officers, shall be held punishable by fine because of the knowledge and intent of its agents to whom it has intrusted authority to act in the subject-matter of making and fixing rates of transportation, and whose knowledge and purposes may well be attributed to the corporation for which the agents act.    While the law should have regard to the rights of all, and to those of corporations no less than to those of individuals, it cannot shut its eyes to the fact that the great majority of business transactions in modern times are conducted through these bodies, and particularly that interstate commerce is almost entirely in their hands, and to

give them immunity from all punishment because of the old and exploded doctrine that a corporation cannot commit a crime would virtually take away the only means of effectually controlling the subject-matter and correcting the abuses aimed at.

There can be no question of the power of Congress to regulate interstate commerce, to prevent favoritism and to secure equal rights to all engaged in interstate trade. It would be a distinct step backward to hold that Congress cannot control those who are conducting this interstate commerce by holding them responsible for the intent and purposes of the agents to whom they have delegated the power to act in the premises.

It is contended that the Elkins Law is unconstitutional, in that it applies to individual carriers as well as those of a corporate character, and attributes the act of the agent to all common carriers, thereby making the crime of one person that of another, thus depriving the latter of due process of law and of the presumption of innocence which the law raises in his favor. This contention rests upon the last paragraph of § 1 of the Elkins Act, which is as follows, 32 Stat. 847:

"In construing and enforcing the provisions of this section the act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier acting within the scope of his employment shall in every case be also deemed to be the act, omission, or failure of such carrier as well as that of the person."

We think the answer to this proposition is obvious; the plaintiff in error is a corporation, and the provision as to its responsibility for acts of its agents is specifically stated in the first paragraph of the section. There is no individual in this case complaining of the unconstitutionality of the act, if objectionable on that ground, and the case does not come within that class of cases in which unconstitutional provisions are so interblended with valid ones that the whole act must fall, notwithstanding its constitutionality is challenged by one who might be legally brought within its provisions. *Employers' Liability Cases*, 207 U. S. 463. It may be doubted whether there

are any individual carriers engaged in interstate commerce, and every act is to be construed so as to maintain its constitutionality if possible. There can be no question that Congress would have applied these provisions to corporation carriers, whether individuals were included or not. In this view the act is valid as to corporations. *Berea College* v. *Kentucky*, 211 U. S. 45, 55.

It is contended that the court should have sustained the objection to the indictment upon the ground that the corporation and its agents could not be legally joined therein, but we think a fair construction of the act permits both the corporation and the agent to be joined in one indictment for the commission of the offense. The purpose of the act was to make the act one of the corporation as well as of the agent, and to include both within the prohibitions and restrictions of the statute, and this seems to be the accepted practice. Thompson on Corporations, § 4495.

Objections were made as to the sufficiency of the indictment based upon its want of particularity in describing the offense intended to be charged. Section 1025 of the Revised Statutes of the United States provides that no judgment upon an indictment shall be affected by reason of any defect or imperfection in matter of form which shall not tend to the prejudice of the defendant, and, unless the substantial rights of the accused were prejudiced by the refusal to require a more specific statement of the manner in which the offense was committed, there can be no reversal. *Connors* v. *United States*, 158 U. S. 408, 411; *Armour Packing Co.* v. *United States*, 209 U. S. 56, 84. An examination of the indictment shows that it specifically states the elements of the offense with sufficient particularity to fully advise the defendant of the crime charged and to enable a conviction, if had, to be pleaded in bar of any subsequent prosecution for the same offense.

It is insisted that if any criminal offense was committed at all it was a single and continuing one against the railroad company, because of the agreement evidenced by the letters which

preceded the transportation, and under the terms of which the shipments were made. We cannot agree to this contention: The statute makes it an offense to give or receive a rebate whereby goods are transported in interstate commerce at less than the published rate; in the present case the jury found the railroad company guilty of rebating as charged. We are not dealing with a case where there was an agreement to carry the goods in the first place at a concession from the established rate, and wherein the railroad company never received the full legal rate. In this case, upon each of the numerous shipments, the full legal rate was paid, and upon claims being presented at short intervals the amount of the stipulated rebate was remitted by check to the shipper. We think the offense was complete when the railroad company thus paid the stipulated rebate to the shipper.

It is further contended that the court below erred in its reference to the absence of the witness Embleton, and the non-production of books in which entries were made concerning the transactions in question. It appears that Embleton was a clerk in the employ of Wilson, and had charge of the books in which these transactions were entered, that he did not appear at the trial, having left because of sickness, nor were the books produced. The comment objected to was made in connection with this paragraph of the charge:

"On this question of intent also, gentlemen, it is competent for you to take into consideration the method in which these transactions were carried on. The letter from Palmer to Guilford was headed private and confidential. It will be proper for you to take into consideration the fact, if you believe the evidence in the case, that the method of making these payments, instead of being by a direct check drawn at Buffalo by or on behalf of this defendant, was by purchasing a draft drawn by the Bank of Buffalo upon the Chemical Bank in favor of Mr. Palmer; and you may take into consideration upon that question the evidence in this case that the original claims presented by Palmer to Pomeroy and sent by Pomeroy to Wilson

have been destroyed; and the fact that when Embleton, the man in charge of the shipments, left the employment there a book containing entries in reference to these claims disappeared, and that Mr. Wilson testified in this case that he did not know where it was.

"Now it is for you to say, gentlemen, whether these occurrences and these facts are consistent with innocence or with guilt, because if a man carries on an act, or any person does anything which upon its face is apparently unlawful, and he does it in a furtive and secret manner, showing that his intention while he does the act is to do it in such a way as to conceal it, the jury may draw the inference from that fact, if they see fit—they are not obliged to, but they may if they see fit—that the intention with which the act was done was to perform an illegal or a criminal act."

We do not perceive any prejudicial error in this charge. It simply amounted to permitting the jury to consider the circumstances enumerated as bearing upon the guilty purposes of the parties charged in the indictment. It left to the jury to attach such weight as they saw fit to the circumstances of Embleton's absence and the non-production of the books. It is to be noted in this connection that the judge, in the latter portion of his charge, at the request of the defendant, said: "There is no evidence that the defendant corporation or those who controlled its corporate action destroyed or failed to produce upon the trial any paper for which the Government has asked."

We have noted all the assignments of error which involve questions of a substantial character.

We find no error in the proceedings of the Circuit Court, and its judgment is

*Affirmed.*

Mr. Justice Moody took no part in this case.