**STEERE TANK LINES, INC., Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 20446.**

United States Court of Appeals
Fifth Circuit.

Dec. 30, 1963.

Rehearing Denied April 20, 1964.

James H. Doores and Gibson, Ochsner, Harlan, Kinney & Morris, Amarillo, Tex., for appellant.

William L. Hughes, Jr., Robert S. Travis, Asst. U. S. Attys., Fort Worth, Tex., Barefoot Sanders, U. S. Atty., for appellee.

Before BROWN, WISDOM and BELL, Circuit Judges.

GRIFFIN B. BELL, Circuit Judge.

Appellant, a motor common carrier operating under the authority of the Interstate Commerce Commission, was convicted on each of fourteen counts[1] of a criminal information after jury trial of violating the following regulation, 49 CFR, § 195.8(a) promulgated by the Commission in that drivers' logs were falsified:

"(a) Every motor carrier shall require that a driver's daily log shall be made in duplicate by every driver employed or used by it and every driver who operates a motor vehicle shall make such a log. Form BMC–59 and the instructions for its use, which form and instructions are set forth below, shall be used for this purpose.

\* \* \*

"1. Drivers and motor carriers will be held responsible for the proper maintenance of the daily logs. Drivers shall keep the log current to the time of the last change of duty status. Failure to make logs, failure to make required entries therein, falsification of entries, or failure to file logs with the motor carrier will make both the driver and the carrier liable to prosecution."

The punishment provided for violation of this regulation is set out in Title 49 U.S.C.A. § 322(a) as follows:

"Any person knowingly and wilfully violating any provision of this chapter, or any rule, regulation, requirement, or order thereunder, or any term or condition of any certificate, permit, or license, for which a penalty is not otherwise herein provided, shall, upon conviction thereof, be fined not less than $100 nor more than $500 for the first offense and not less than $200 nor more than $500 for any subsequent offense."

There is no contention that the regulation is invalid, or that violation of it is not otherwise subject to the punishment. And, as appellant notes in its brief, having had a former conviction under this regulation, the punishment was assessed by the trial judge at the minimum of two hundred dollars on each count. This appeal is from the judgment of conviction, and the errors assigned go to a claimed fault in the charge, and to the admission in evidence, over objection, of testimony concerning discrepancies in logs other than those charged in the information.

Appellant had its main office in Dallas, Texas and its Safety Department in Albuquerque, New Mexico. In December

[1]. Count 1 of the information will suffice as an example of the nature of each of the counts:

"On or about the 3rd day of May, 1961, at Dumas, State and Northern District of Texas, Amarillo Division, Steere Tank Lines, Inc., defendant, a corporation, a common carrier by motor vehicle, did knowingly and wilfully fail to require D. R. Kiser, a driver in its employ, to make and keep a driver's daily log in the form and manner prescribed by the Motor Carrier Safety Regulations (49 CFR 190 to 196), in that the driver's daily log, received and accepted by said defendant from said driver as a record of the work performed by said driver for said defendant on said day, contained entries showing that said driver was off duty from 7:00 p. m. to 11:59 p. m. at Mancos, Colorado, whereas, in truth and in fact, as defendant well knew, said driver was driving a motor vehicle and performing other work for said defendant at 9:26 p. m. at Fort Garland, Colorado, on said day. (49 CFR 195.8; 49 U.S. Code 322(a)."

1960, it leased certain trucks, to be driven by drivers who were to be in its employ but who were theretofore assigned to the trucks and employed by the lessors, from a terminal in Dumas, Texas for the purpose of hauling asphalt from Dumas to points in the State of Colorado. The log violations charged involved drivers operating out of this terminal, and occurred in May 1961. The lease agreement was cancelled in August 1961.

The evidence showed that an Interstate Commerce Commission inspector had conferred with appellant with regard to log violations in 1956, 1957, 1958 and 1960. The government presented the testimony of six drivers who were involved in the violations charged in twelve of the fourteen counts. They testified in substance that they had made a practice of preparing and filing logs with appellant containing false entries as to the times they were off duty and that the practice was followed in operations from Dumas to the points in Colorado, including the trips involved in the respective counts of the information. Their purpose was to earn extra money by driving over and above the lawful number of hours allowed by the regulations.[2] There was also evidence, aside from the fact that the drivers wanted to make the extra money, that the extra hours were necessary in order for appellant to handle the business on hand with the available equipment and manpower.

One of the two lessors served as dispatcher for appellant at the Dumas terminal and had knowledge of the falsification of the logs. The logs were sent by him to the Safety Department in Albuquerque. A simple comparison of these records with port of entry records obtained by each driver from the State of Colorado and turned in to the dispatcher would have disclosed the falsification. These port of entry records were sent from Dumas to the main office of appellant in Dallas instead of to the Albuquerque office and, of course, one of

the contentions of appellant on the trial was that they had no knowledge that such a comparison would have shown the discrepancies, and that the Safety department in Albuquerque did not have access to the Dallas office records.

■ The evidence disclosed that during or near the period of the violations charged, one hundred twenty five false logs were filed by thirty five drivers operating from four different terminals of appellant relating to trips to Colorado. This disclosure resulted from a comparison by a safety inspector for the Interstate Commerce Commission of approximately three hundred of the Colorado port of entry receipts with the driver's daily logs. The records compared were for the months of April and May 1961, and covered trips to Colorado only. The admission of this evidence forms the basis of one of the claimed errors. However, it was relevant and material to the charges against appellant for falsifications during the month of May 1961 in connection with trips to Colorado, and went to the question of wilfulness. Roe v. United States, 5 Cir., 1963, 316 F.2d 617. Cf. United States v. E. Brooke Matlack, Inc., D.C.Md., 1957, 149 F.Supp. 814. This evidence also served to negate the evidentiary defense put forth throughout the trial that the violations charged were the result of mere negligent or accidental failure to require proper logs, something that would not amount to a crime under the regulation. See Inland Freight Line v. United States, 10 Cir., 1951, 191 F.2d 313. We thus hold that there was no error in admitting this evidence.

■■ The assignment of error based on the jury charge presents a question more difficult of solution. It is now beyond doubt that a corporation may be held criminally liable. New York Cent. & H. R.R. Co. v. United States, 1909, 212 U.S. 481, 29 S.Ct. 304, 53 L.Ed. 613; United States v. Illinois Central R. Co., 1938, 303 U.S. 239, 58 S.Ct. 533; 82

2. The regulations require that a driver must have eight hours off duty after having driven ten consecutive hours before he can drive again.

L.Ed. 773; United States v. A & P Trucking Company, 1958, 358 U.S. 121, 79 S.Ct. 203, 3 L.Ed.2d 165; Inland Freight Lines v. United States, supra, Riss & Company v. United States, 8 Cir., 1958, 262 F.2d 245; and United States v. E. Brooke Matlack, Inc., supra. These cases also settle the proposition that knowledge of employees and agents of the corporation is attributable to the corporation, and that their acts may amount to wilfulness on the part of the corporation.

■ It is clear from the case of United States v. Illinois Central R. Co., supra, that "knowingly" and "wilfully" are separate elements of the violation, but that neither term connotes an act done with evil purpose or criminal intent. The Supreme Court there pointed out:

"Mere omission with knowledge of the facts is not enough. The penalty may not be recovered unless the carrier is also shown 'willfully' to have failed. In statutes denouncing offenses involving turpitude, 'willfully' is generally used to mean with evil purpose, criminal intent or the like. But in those denouncing acts not in themselves wrong, the word is often used without any such implication. Our opinion in United States v. Murdock, 290 U.S. 389, 394 [54 S.Ct. 223, 78 L.Ed. 381, 384], shows that it often denotes that which is 'intentional, or knowing, or voluntary, as distinguished from accidental,' and that it is employed to characterize 'conduct marked by careless disregard whether or not one has the right so to act.' The significance of the word 'willfully' as used in § 3 now before us, was carefully considered by the circuit court of appeals for the eighth circuit in St. Louis & S. F. R. Co. v. United States (C.C.A. 8th) 169 Fed. 69. Speaking through Circuit Judge Van Devanter, now Mr. Justice Van Devanter, the court said (p. 71):
' "Willfully" means something not expressed by "knowingly," else both would not be used conjunctively

* * *. But it does not mean with intent to injure the cattle or to inflict loss upon their owner because such intent on the part of a carrier is hardly within the pale of actual experience or reasonable supposition. * * * So, giving effect to these considerations, we are persuaded that it means purposely or obstinately and is designed to describe the attitude of a carrier, who, having a free will or choice, either intentionally disregards the statute or is plainly indifferent to its requirements.' "

See also Riss & Company v. United States, supra, and United States v. E. Brooke Matlack, Inc., supra, involving the regulation and statute before us to this same effect.

■ There is no doubt that the evidence here was sufficient to support a finding by the jury of violations, knowingly and wilfully done, by appellant but that is not the end of the matter. We held in Standard Oil Company of Texas v. United States, 5 Cir., 1962, 307 F.2d 120, a case involving the prosecution of corporations under the Connally Hot Oil Act, Title 15 U.S.C.A. § 715, et seq., where the violation was through the act of employees, ostensibly in the performance of their duties, but actually in cooperation with a third person in the accomplishment of a criminal purpose for the benefit of the third person, and whose acts did not benefit the employer, but in some instances resulted in the theft of its properties, that this did not amount to acts knowingly done by the corporation. The employees were not acting for the benefit of the corporation. The question of wilfulness was not there involved as it was not an element of the statute, and the statute was analogized with those where "knowingly" was held to mean that the corporation must have acted with specific wrongful intent. See Boyce Motor Lines v. United States, 1952, 342 U.S. 337, 72 S.Ct. 329, 96 L.Ed. 367; St. Johnsbury Trucking Company v. United States, 1 Cir., 1955, 220 F.2d 393; and United States v. Chicago

Express, Inc., 7 Cir., 1956, 235 F.2d 785. Each of these cases involved Title 18 U.S.C.A. § 835 having to do with punishment for violation of Interstate Commerce Commission regulations applicable to the transportation of explosives. That statute was not in the malum prohibitum class and made proof of specific wrongful intent necessary.

■ The statute under consideration here is of the malum prohibitum class but, as stated, proof of both knowledge and wilfulness is required, and this brings up the issue of whether, under the charge, and in spite of the abundance of evidence to support the verdict, the court erred with respect to the instruction that appellant was bound by the knowledge that its truck drivers, alone, had of falsifications. This brings into focus, not only proof of knowledge in such manner, but the additional element of attributing wilfulness to the corporation through acts of the truck drivers alone. After giving a proper charge on the meaning of "knowingly" and "wilfully", and stating that it was not necessary to show that an evil or criminal intent existed, the court went into the subject of a corporation acting through agents and employees, and how knowledge was attributed to the corporation. So much of the charge as includes, or bears on this instruction in question is set out in the margin.[3]

Appellant states that the crux of this appeal is the answer to one question, contending that this is the meaning of the instruction: Is the appellant corporation guilty of the offenses charged simply because its drivers falsified logs, or must the government prove acts or failure to act on the part of agents of the corporation other than its drivers? This is a clear statement of the issue based on the sense of the instruction. This issue is present only because of the addition of the words "such as truck drivers", or more explicitly, if these words were to be used, because of the failure to go further and charge that knowledge sufficient to serve as a basis for a finding of a violation knowingly and wilfully done would depend on knowledge on the part of agents and employees of the corporation other than the truck drivers doing the falsifying. This necessarily follows from our holding in Standard Oil of Texas, supra, for if the falsifications were for the benefit of the truck drivers only, and unknown to any other agent or employee of the corporation, they could not rise to the level of proscribed violations.

It is argued that the charge is substantially based on the statement of the court in United States v. E. Brooke Matlack, Inc., supra, as adopted in Riss & Company v. United States, supra, and represents a clear statement of the law. But there was no reference to truck drivers in the statements there made, and no jury charge was involved. While the charge as given here is technically a correct statement of law, it nevertheless may have engendered confusion and ambiguity and over emphasis in the background of the evidence that each of the truck drivers acted for his own benefit. The charge as given was erroneous in light of the evidence, and we must determine whether it constituted harmful error.

■ This determination must be made on the basis of the rule laid down in

3. "The defendant company, as a corporation, is a legal entity, that is an intangible being, and, in the nature of things, can act, know, reason, choose or have discernment only through the medium of persons working as its managers, or agents, or any of the lesser rank of employees, and in practical necessity it is liable for the acts of such persons done within the bounds of their authority and duty as one doing some part of the work of the corporation. Knowledge affecting the corporation, which has been gained by any officer, agent or employees thereof in the course of his work for the company is attributed to the corporation, and this includes subordinate employees, such as truck drivers. The corporation cannot be shielded from such imputed knowledge on the ground that an employee in doing his regular work for the company committed a violation of some instruction by the company.

724

Kotteakos v. United States, 1946, 328
U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557
which teaches that an appellate court
must determine what the error meant to
the jury in relation to all else that hap-
pened, and that the error is to be deemed
harmless if the conviction is sure that
the error did not influence the jury, or
had but very slight effect. See Ahlstedt
v. United States, 5 Cir., 1963, 315 F.2d
62, and cf. Mole v. United States, 5 Cir.,
1963, 315 F.2d 156. If that be the case,
then the error is harmless within the
meaning of Title 28 U.S.C.A. § 2111, and
Rule 52, F.R.Crim.P. which point out
that an error which does not affect the
substantial rights of a party shall be
disregarded.

Viewing the error in the light of the
whole record, the following facts become
paramount. The violations occurred out
of the Dumas terminal. The manager of
the terminal was the agent of appellant.
He knew of the falsifications. It is true
that the drivers falsified the records to
make extra money, but it is also true
that the situation of insufficient equip-
ment and a shortage of drivers for the
rush of business made a rife situation
for falsification. The "word" to at least
one of the drivers at this terminal was
to follow the practice which resulted in
a falsified log if he was to keep his job.
Moreover, appellant had been repeatedly
warned of falsified logs, and had records
in its possession, although in separate
offices, which would have easily disclosed
the falsifications. We hold that it af-
firmatively appears from the whole rec-
ord that the error in the charge had
but slight effect, if any, on the jury and
was therefore harmless.

It follows that the judgment appealed
from should be, and it is affirmed.

ON PETITION FOR REHEARING

PER CURIAM:

After careful reconsideration of the
whole record we adhere to our original
ruling that the erroneous charge was
harmless. The evidence against appel-
lant went far beyond the fact of the sev-
eral acts of the drivers which were in
violation of the regulation. There being
no merit otherwise in the petition for
rehearing, it is ordered that the same
be, and it is, hereby denied.