Robert G. Renner, U. S. Atty., by Joseph M. Livermore, Asst. U. S. Atty., for plaintiff.

Conmy, Feste, DeMars & Bossart, by David T. DeMars, Fargo, N. D., for defendant.

**UNITED STATES of America, Plaintiff,**

v.

**SAWYER TRANSPORT, INC., Defendant.**

**No. 4–71 Cr. 95.**

United States District Court, D. Minnesota, Fourth Division.

Dec. 15, 1971.

NEVILLE, District Judge.

49 Code of Federal Regulation § 395.8 provides in part that "every motor carrier shall require that a driver's daily log . . . shall be made in duplicate by every driver used by him or it . . . . [F]alsification of entries . . . shall make both the driver and the carrier liable to prosecution." These are required to be submitted to and retained by the motor carrier. 49 C.F.R. § 395.1 compels every motor carrier to comply with the above and other regulations. 49 U.S.C. § 322(g) provides criminal penalties against motor carriers which "knowingly and willfully keep any accounts, records, or memoranda contrary to the rules, regulations, or orders."

Defendant is a duly licensed motor carrier employing, or on a lease basis using the services of, an average of 300 drivers per day. Thus in a 30 day month approximately 9,000 daily driver's logs are filed with the carrier. Defendant is charged in the 20 count information in effect with having accepted false driver's logs which it knew or must or should have known to be false based on its own files and records and in some instances supported by affirmative actions its employees took. So, as to Counts I, III, IV, V, VI, VIII, XI and XV it is

clear and the court so finds that the driver's daily logs either reported the driver to be off duty or in some other locale at the same time that he was in fact receiving a citation or in one instance a traffic ticket at a specific and some times differing locations. The citations were for the most part the result of overweight loads and fines were assessed. In each instance the defendant motor carrier was notified and several times either posted by telegraph a bail bond, or paid the fine imposed and/or deducted the same from the amount ultimately paid the driver. As to these counts, the evidence is clear beyond a reasonable doubt that the driver's logs were demonstrably and clearly false. The citations are certified copies of official State records, for the most part the State of Wisconsin.

■ Assuming as the court has found that the driver's logs specified in Counts I, II, IV, V, VI, VIII, XI and XV are false the critical question in the case is whether defendant's conduct is knowing and wilful within the meaning of 49 U. S.C. § 322(g). The government produced on the witness stand one James R. Jeglum, an employee of the Department of Transportation, Safety Compliance Division. He testified he had inspected the records of the defendant Sawyer Transportation, Inc. in September 1967, in July 1970 and again in December 1970. He testified, over the objection of defendant, that in 1967 he found what he believed to be false daily driver's logs and personally conferred with and advised Warren Summerfield, defendant's director of safety and Robert Sawyer, the President of defendant company of his findings. A written safety compliance report was given to Mr. Sawyer at that time. Because of the objection of counsel, the court heard the above testimony as an offer of proof. On reflection, the court believes the offer of proof should be accepted and defendant's objection should be and hereby is overruled. Proof of intent, of knowledge and wilfulness on defendant's part presents a subjective test and the prof-

fered evidence showing a prior warning of violative conduct is relevant on this issue.

The investigative visits of July 1970 and December 1970 resulted in the filing of the present information. Again the claimed false reports were discussed with company personnel by Jeglum, this time with a Mr. Fornell, the present Director of Safety for defendant and again with Mr. Sawyer. The response from either or both was that policing the reports and daily logs was prohibitive as to cost and that Congress could not have intended that such a burden be borne by private companies such as defendant. It is clear to the court that such contention is in error and has no merit legally.

Congress recognized that interstate highway safety is a national problem and that excessive hours spent in driving over the road endangers others using the highways as well as the individual driving; that the only practical way to exercise control over independent day and night around the clock truck drivers is to limit their continuous hours of operation; that to enforce such, a log showing time on and off duty, time spent in driving as well as time spent in the sleeper berth is required to be kept and filed each day or at the completion of each trip with the employing motor carrier. Congress did not deem it an undue burden to require all drivers to file such nor to impose on the motor carrier the burden of policing such to determine their truth or falsity.

■■ Wilfulness in a case such as at bar is established by proof that defendant is plainly indifferent to the requirements of the statute and regulations. It is true that different corporate employees of defendant handled the logs than those to whose attention came the various citations and fines and who authorized the posting of bail or the payment of the fines. While mere inadvertence or negligence may not equate with "knowingly and wilfully", actual knowledge of falsity in the possession of the defendant corporation to be gleaned from its own records is more than mere

inadvertence or negligence and cannot be excused merely by asserting that one employee knew of the logs and another of other facts but that neither knew what the other did. Both were corporate employees and knowledge of each is imputed to the corporation which thus had knowledge. In failing to act to cure the practice of filing false logs and permitting it to continue, the corporation is guilty of wilfulness; particularly so where there had been a prior warning by a government employee of claimed statutory violations.

In Inland Freight Lines v. United States, 191 F.2d 313, 315 (10th Cir. 1951), the court stated:

". . . The logs and the reports did not find their way into the hands of a single agent or representative of the company after they were filed. No single agent or representative in the offices of the company had actual knowledge of their conflicts and falsities. But one agent or representative had knowledge of the material contents of the logs and another had knowledge of the material contents of the reports. And the knowledge of both agents or representatives was attributed to the company. New York Central and Hudson River Railroad Co. v. United States, 212 U.S. 481, 29 S.Ct. 304, 53 L.Ed. 613."

The Eighth Circuit Court of Appeals in Riss and Co. v. United States, 262 F. 2d 245, 250 (8th Cir. 1958), has stated in a case similar to the one at bar:

" . . . Although the excess and prohibited driving hours were readily discoverable to one expert in the field upon a mere 'glance' at the logs, no one in defendant's entire organization admitted that he acquired actual knowledge of the violations, until months after the final violation here involved was committed. But the means were present by which the defendant could and would have detected the infractions and its failure to do so under the existing circumstances can-

not, as contended, absolve it of liability as a matter of law."

See in support of the above holding the further cases of United States v. John Henricks, Inc., 388 F.2d 677 (7th Cir. 1968); Steere Tank Lines, Inc. v. United States, 330 F.2d 719 (5th Cir. 1963); United States v. Pennsylvania Greyhound Lines, 85 F.Supp. 436 (D. Pa.1949).