**UNITED STATES of America, Plaintiff,**

v.

**DANIEL HAMM DRAYAGE COMPANY, Defendant.**

**No. 71 Cr. 210(4).**

United States District Court, E. D. Missouri, E. D.

Aug. 21, 1972.

Daniel R. Barnett, U. S. Atty., St. Louis, Mo., for plaintiff.

Ernest A. Brooks, II, St. Louis, Mo., for defendant.

## MEMORANDUM

WANGELIN, District Judge.

This criminal action was initiated by an information filed by the United States Attorney on June 29, 1972. Said information charged this corporate defendant, Daniel Hamm Drayage Company (Hamm), with knowingly and willfully failing to provide a 1969 model truck-tractor with conventional cab, a 1963 model semitrailer, and a steerable-dolly, a combination vehicle (49 C.F.R. 390.1), with a header board or similar device to prevent the cargo from shifting and penetrating or crushing the driver's compartment, in violation of 49 C.F.R. 393.85 and 49 U.S.C. § 322(a).

By its president the defendant pleaded not guilty and this action came on for trial on the merits to the Court sitting without a jury.

During the trial of this action testimony was adduced, exhibits and a stipulation of facts were entered in evidence. The Court being fully advised in the premises, makes the following findings of fact and conclusions of law.

### General Finding

The Court finds the defendant, Daniel Hamm Drayage Company, not guilty of the violations charged in the information of the United States Attorney filed in this action.

### Special Findings

The defendant is a corporation and a common carrier by motor vehicle operating in interstate commerce. Defendant holds authority from the Interstate Commerce Commission to transport, *inter alia*, heavy equipment and specialized commodities under certificate No. MC–42963.

On February 5, 1971, at 9:04 a. m., one of Hamm's vehicles, being used to transport a bridge girder, was involved in an accident at the intersection of Morganford Road and Loughborough Avenue, in St. Louis, Missouri. The accident occurred when the driver of the vehicle applied his brakes suddenly. The girder shifted forward, crushing the driver's compartment and injuring the driver. The impact caused the driver to lose control of the vehicle, which collided with five parked vehicles and a light pole.

At the time the accident occurred, Hamm was transporting the girder from Stupp Bros. Bridge and Iron Co., located in St. Louis, which had fabricated the girder, to the site of a bridge construction job at the Kaskaskia River at Highway 154 near Baldwin, Illinois. Hamm had previously transported eleven of the 25 girders fabricated by Stupp Bros. to the bridge site from St. Louis without incident.

The motor vehicle equipment involved in the accident of February 5, 1971 can be described as follows:

(a) *Number one piece of equipment*: A tandem axle diesel tractor equipped with a large heavy duty highmounted Braden winch, which is mounted behind the cab of the tractor by means of high tensel bolts, brackets, and by weldments. This tandem axle tractor was used as the power source and was coupled by a king pin to a forty foot tandem axle flat bed trailer.

(b) *Number two piece of equipment*: A forty foot tandem axle flat bed trailer attached to the tandem axel power tractor. This flat bed trailer was equipped with a turn-table or spin plate located and mounted on the center of the flat bed trailer deck. This spin plate was the bearing surface for the front bolster, which received and was the main front bearing surface of the girder in question. This bolster is constructed of structural steel and attached to the spin plate by means of a center king pin. The top surface of the bolster consisted of a wood timber measuring 12 inches in height and 12 inches in width and 10' 2" in length. It was bolted on to the metal portion of the bolster. The bolster is so constructed that there are openings on the ex-

treme ends to receive one-half inch chains which were used to secure the load to the bolster.

(c) *Number three piece of equipment*: A specially designed and built piece of equipment (steering dolly) consisting of three axles, two of which are tandem axles located at the extreme front end of the dolly and the third axle is a single axle located at the rear of the dolly and is used as a steering axle. It is equipped with a driver's seat and steering wheel mounted at the rear bumper. Close to the center of the tandem axles on the steering dolly is a fifth wheel equipped with a bolster that is attached and is exactly like the one mounted on vehicle number two. Also attached to the steering dolly are air lines and electric cords used to operate the braking system. In addition to the braking system which is controlled by the power unit or vehicle number one, the driver of the steering dolly has the facilities to work the hand valve for the brakes on the steering dolly. An additional piece of motorized equipment but not a basic piece of hauling equipment was used in the operation. This was a pick-up truck equipped with appropriate signs, lights and flags. It also is equipped with a two-way radio that enables the driver of the power unit and the driver of the pick-up truck to be in communication at all times. This pick-up truck follows the equipment hauling the girder from its point of origin to its destination for safety purposes.

(d) *Special stiffener device*: A supplementary prefabricated structural steel member that was designed and created by the shipper, the Stupp Bros. Bridge and Iron Company, and accepted for use by the Daniel Hamm Drayage Company was secured by chains to the top rear section of the girder and located above the fulcrum or bearing point of the steering dolly. The primary purpose of this added stiffener is to eliminate any sway or belly in the girder being hauled. The

maximum strength in a bridge girder of this type is achieved when the girder is in a vertical position. Due to the extreme height of these girders, they had to be loaded in a horizontal position for transporting. This then required the engineering, fabricating and use of the above-mentioned stiffener to meet Illinois State Highway Engineering requirements.

The girder in question can be described in the following manner: A structural member having flanged ends which are joined together by a sheet plate of steel commonly called the "web". The dimensions of the girder in question in this case are 2 feet in height, 10 feet, 2 inches in width, 122 feet, 2 inches in length and weighed 21 tons.

Hamm has been in the motor carrier business, hauling heavy and specialized equipment, for many years. Its managerial and other operating personnel are fully familiar with the requirements of the Motor Carrier Safety Regulations issued by the Interstate Commerce Commission and (since 1967) by the Department of Transportation. On February 5, 1971, the manager of Hamm's Heavy Hauling Division (which was responsible for the movement of the bridge girders) knew that the Motor Carrier Safety Regulations required header boards or similar devices on certain commercial motor vehicles.

The girder, which was being transported at the time of the accident, had been loaded on the motor vehicle equipment with its flanged edges resting on top of the timber secured to the bolsters. Thus, the web was in a horizontal position. To prevent the load from shifting forward toward the driver's compartment when the vehicle decelerated, defendant secured additional timbers to the top of the bolster and extended these timbers up between the flanged edges, which rested on the bolster, to the web and against a structural steel plate, which was perpendicular to the web. These timbers were to prevent the forward shift of the girder by catching the

**132**

structural steel plate against which the timbers rested.

### Conclusions of Law

§ 322(a) of Title 49, United States Code, proscribes "[a]ny person [from] knowingly and willfully violating any provision of this chapter, or any rule, regulation, requirement, or order thereunder. . . ." Pursuant to the duty established by 49 U.S.C. § 304(a), Federal Highway Administration regulation 49 C.F.R. § 393.85 was promulgated and provides as follows:

> Every motor vehicle carrying cargo, the nature of which is such that the shifting thereof due to rapid deceleration or accident would be likely to result in penetration or crushing of the driver's compartment must, in addition to having the load securely fastened or braced, be provided with header boards or similar devices of sufficient strength to prevent such shifting and penetration. All motor vehicles shall be so constructed or be equipped with adequate cargo fastening devices so that the load will not penetrate the cargo compartment wall when subjected to the maximum braking deceleration of which the vehicle is capable.

The timbers which were secured to the bolster and which were extended to the web and against the steel plate were intended by the defendant to serve as a "similar device" required by the regulation. Defendant made no claim to have employed a "header board". The "similar device" which defendant did employ did not comply with the regulation since it did not prevent the load from shifting and crushing the driver's compartment when the deceleration occurred. Therefore, defendant violated the subject regulation of the Federal Highway Administration.

Such violation, however, must be committed "knowingly and willfully" before defendant may be adjudged criminally liable under 49 U.S.C. § 322(a). Steere Tank Lines, Inc. v. United States, 330 F.2d 719 (5th Cir. 1963). Such violation "is one that is conscious and intentional, deliberate and voluntary, rather than merely negligent." United States v. Joralemon Brothers, Inc., 174 F.Supp. 262 (E.D.N.Y.1959).

The magnitude of the girder involved in the instant occurrence, the elaborate operation organized by the defendant in the transportation of the girder, and the success with which the defendant transported other girders before the accident indicate that *at most* defendant was negligent in its failure to prevent the shifting and resultant injuries. The plaintiff has failed to prove beyond a reasonable doubt that, under the circumstances of the present action, defendant knowingly and willfully violated the subject regulation.