**BOWLES, Adm'r, Office of Price Administration, v. SISK et al.**

No. 5261.

Circuit Court of Appeals, Fourth Circuit.

July 27, 1944.

A. M. Dreyer, Atty., Office of Price Administration, of Washington, D. C. (Thomas I. Emerson, Deputy Adm'r for Enforcement, Fleming James, Jr., Director, Litigation Division, David London, Chief, Appellate Branch, and Lowell Grady, Atty., all of Washington, D. C., Paul Ross, Regional Atty., of New York City, and Francis Murray, Atty., Office of Price Administration, of Baltimore, Md., on the brief), for appellant.

Hilary W. Gans, of Baltimore, Md., and F. W. C. Webb, of Salisbury, Md., for appellees.

Before PARKER, SOPER, and NORTHCOTT, Circuit Judges.

PARKER, Circuit Judge.

This is a suit instituted by the Administrator, Office of Price Administration, to enjoin defendants, who are merchandise brokers, from taking part in any sale wherein the price paid by the buyer to the seller plus the amount paid to the defendants exceeds the seller's allowable maximum price. The question involved in the case is whether defendants are brokers within the meaning of section 1341.562(b) of the Maximum Price Regulation issued by the Administrator. The District Judge, answering this question in the negative, dismissed the suit; and the Administrator has appealed.

The regulation under which relief is asked is as follows:

"Sec. 1341.562b. Position of · brokers. In accordance with existing trade custom, every broker taking part in a sale in which the seller is a processor shall be considered as the agent of the seller and not the agent of the buyer. In each case, the amount paid by the buyer to the broker plus the amount paid by the buyer to the seller shall not exceed the seller's maximum price plus allowable transportation actually paid by the seller or by the broker."

This regulation was issued on August 12, 1943, as Amendment No. 14 to Regulation No. 306. At the same time the Administrator issued a statement of the considerations underlying its adoption which is as follows:

"The accompanying amendment to Maximum Price Regulation No. 306 adds a new section 1341.562b to that regulation, making clear the position of brokers. The section provides that a broker taking part in a sale in which the seller is a processor shall be considered the agent of the seller and not the agent of the buyer. The section in effect does no more than to require that brokers operate as they have historically operated.

"Provision is made that the amount paid by the buyer to the broker plus the amount paid by the buyer to the seller, shall not exceed the seller's maximum price plus allowable transportation actually paid by the seller or by the broker.

"Brokers are normally the agents of the processor and not the agent of the processor's customers, and their commissions have customarily been paid to them by the processor out of the proceeds of the sale. In some cases the purchasers have paid the commission directly to the brokers as

a matter of convenience but without changing the essential relationship of the parties to one another.

*"The ceiling prices fixed by Maximum Price Regulation 306 for processors include a factor to compensate the processors for the commissions normally paid by them to brokers for negotiating sales,* and it was contemplated that brokers and processors would continue to operate in their customary manner. However, certain brokers, acting in conjunction with the processors, have attempted to violate the intent of the regulation by considering the broker the agent of the buyer. The brokers in these cases have attempted to charge the purchaser their commissions over and above the processor's ceiling. *Thus, the processor receives the full ceiling price which includes a factor to compensate him for brokerage fees, but does not pay the broker his fee.* The accompanying amendment remedies this situation by providing that the broker shall be considered the agent of the seller and that *the price the buyer pays to the broker, plus the amount he pays to the seller, shall not exceed the processor's ceiling* plus actual transportation actually paid by the seller or broker.

"The provisions of the accompanying amendment are, in the judgment of the Price Administrator, generally fair and equitable, and will effectuate the purposes of the Emergency Price Control Act of 1942 as amended. Executive Order No. 9250 and Executive Order No. 9328." (Italics supplied).

It was stated at the bar of this Court that defendants were originally brokers, being paid commissions, as is usual in such cases, by the processors or sellers. Following the enactment of the Robinson-Patman Act they changed their method of doing business, purchasing for themselves from the processors and selling for themselves to the buyers and calling themselves distributors. On August 2, 1943, the Administrator issued a Maximum Price Regulation which prohibited distributors of the class of defendants from charging a price in excess of that charged by his supplier. Whereupon defendants again changed their method of doing business and charged and were paid commissions or other compensation for acting as agents for the buyers, the facts with respect to their method of doing business being thus stated by the court below:

"Under one form of agreement, Sisk became the customer's agent for the purchase of canned goods for which services Sisk receives as compensation 3% of the purchase price of such goods, payable monthly, it being further agreed that no purchases are to be made by Sisk at prices in excess of the current applicable ceiling price of the seller; that Sisk is to receive no compensation from the seller; and that the compensation paid by the customer to Sisk is not to be included in the resale ceiling prices. Under the other form of agreement, Sisk also became the customer's agent for the purchase of canned goods and for the furnishing of daily reports relating to current supplies of such goods, price trends, production figures, etc. For these services, Sisk receives compensation at a fixed annual rate, payable in equal monthly installments." 55 F.Supp 784, 786.

In support of the lower court's conclusion that defendants are not brokers within the meaning of the regulation, counsel argue that the year books of the National Food Broker's Association show that the compensation of the broker is paid by the seller, that this is a settled custom of the trade, and that defendants cannot properly be classified as brokers within the meaning of the regulation because they receive their entire compensation from the buyers. They argue, also, that this conclusion is supported by statements made by representatives of the Administrator at or shortly prior to the time that the regulation was formulated. We are not impressed with this argument. The language of the regulation is clear and unambiguous and there cannot be any doubt that defendants are brokers within its clear meaning. The fact that their compensation is paid by the buyer rather than the seller does not change their position as brokers. As said by the Committee of Congress reporting on the Robinson-Patman Act (House Rep. 2687, 74th Cong. 2d Sess.), quoted by this Court in Oliver Bros. v. Federal Trade Commission, 4 Cir., 102 F.2d 763, 767:

"The true broker serves either as representative of the seller to find him market outlets, or as representative of the buyer to find him sources of supply. In either case he discharges functions which must otherwise be performed by the parties themselves through their own selling or buying departments, with their respective attendant costs. Which method is chosen depends presumptively upon which is found more economical in the particular case;

but whichever method is chosen, its cost is the necessary and natural cost of a business function which cannot be escaped. It is for this reason that, when free of the coercive influence of mass buying power, discounts in lieu of brokerage are not usually accorded to buyers who deal with the seller direct, since such sales must bear instead their appropriate share of the seller's own selling cost."

It appears here that, in fixing the maximum price to be charged by processors, the Administrator has made allowance for the brokerage commissions ordinarily paid by the processor to the broker to bring about a sale of the goods. To permit the brokerage to be collected from the buyer and the processor to receive the full price, already fixed high enough to include brokerage charges, would be to permit the processor to receive more than his portion of the maximum and would require the buyer to pay higher than the maximum. In the Oliver Brothers case, supra, we sustained an interpretation of the Robinson-Patman Act, 15 U.S.C.A. § 13 et seq., which forbade the buyer to obtain a preferential price by shifting to the seller a part of his cost. We think that the effect of the regulation here is to prevent the seller's obtaining a price above the maximum by shifting what is normally a part of his cost to the buyer.

The service rendered by defendants is a service necessary to the canned goods trade. Canners of fruits and vegetables are ordinarily not justified in maintaining a sales organization large enough to reach buyers throughout the large area in which their products are consumed, and conversely buyers, with the exception of the chain stores, are ordinarily not justified in maintaining a buying organization large enough to maintain contact with the various processors. Middlemen such as defendants render a real service in supplying the equivalent of a sales organization for processors and the equivalent of a buying organization for purchasers. For this service they are entitled to compensation and receive it either by way of broker's commissions or by way of profits. In the normal way of doing business, they receive the compensation by way of broker's commissions paid by the processors or sellers; and only where there is desire to avoid the effect of some law is there ordinarily any occasion to act as independent dealers or to charge brokerage commissions to buyers. The Administrator properly based his regulations on the general custom prevailing in the business and fixed the sellers' maximum price at a figure high enough to take care of brokers' commissions. Having done this, he was justified in adopting the regulation in question to prevent the shifting of commissions to buyers with the resultant addition to the maximum price. No question is raised before us as to the validity of the regulation, and we see no reason to question its validity. Nor do we see any reason why it should not be enforced against the defendants, who fall clearly within its provisions. The fact that certain officials of the Office of Price Administration may have thought that it would not apply to them is, of course, no reason; and we find no equitable consideration which would justify the Court in refusing to enjoin defendants from its violations.

For the reasons stated, the decree appealed from will be reversed and the cause will be remanded for further proceedings not inconsistent herewith.

Reversed.