Cha-Kir Realty Corporation, Landlord, *v.* Gloria Sanchez et al., Tenants.

Municipal Court of the City of New York, Borough of Manhattan, December 6, 1944.

*Joseph E. Dyer* for landlord.

*Thomas C. Murray* for tenants.

*Ivan E. Maginn* and *Maurice R. Whitebook* for Office of Price Administration.

Lewis, J. In this summary proceeding for nonpayment of rent, the tenants counterclaim against the landlord for remedial damages and a reasonable counsel fee, as provided in the Emergency Price Control Act of 1942 as amended (U. S. Code, tit. 50, Appendix, § 901 *et seq.*), alleging a violation of the provisions of the Rent Regulation for Housing in the New York City Defense-Rental Area (8 Fed. Reg. 13914).

The essential facts are not disputed. Mr. Mortimer J. Wolford, a duly licensed real estate broker, is the landlord's managing agent of premises 3140 Broadway, in the borough of Manhat-

tan, New York City, a residential apartment house. Mr. Wolford testified that, as such managing agent, he has complete charge of the selection of tenants, the execution of leases, the collection of rents and all other incidentals in the management of the premises. On or about August 1, 1944, the tenants negotiated with an employee of Mr. Wolford for the purpose of renting apartment 62 in said premises for the maximum legal rent of forty dollars per month. The tenants were required to pay to Mr. Wolford the sum of eighteen dollars, as a condition of obtaining a one-year lease of the apartment, such sum concededly representing a leasing commission at the rate of $3\frac{3}{4}\%$ of the annual rent of the apartment. Mr. Wolford gave the tenants a separate receipt for the payment of said sum, which clearly stated that the same was a commission for the renting of the apartment. Mr. Wolford retained the commission and did not inform the landlord of the charge or the collection. The tenants adduced expert testimony to the effect that it was the custom in this area, on March 1, 1943 (the maximum rent date established by the Administrator of the Office of Price Administration, 8 Fed. Reg. 13914), for the owner of residential real estate to pay the commissions to the managing agent for new leases, or for renewals of leases. The landlord offered no testimony either as to the general custom or as to the practice in the premises. Significantly, however, the management contract between the landlord and Mr. Wolford, dated May 22, 1944, which appears to be the regular Real Estate Board form of management contract, contained the usual printed clause providing for the payment by the landlord to the agent of commissions for new leases and renewals, but this printed clause was stricken out at the time of execution.

It is clear that the exaction of the commission by the landlord's agent constitutes a violation of the Rent Regulation for Housing. On the maximum rent date, such commission was payable by the landlord. Any transfer of the obligation to pay the commission constitutes an addition to the maximum rent, since the landlord would have had to pay it from the rent, had the obligation not been imposed upon the tenants. The term "Rent" is defined in paragraph (10) of subdivision (a) of section 13 (8 Fed. Reg. 13919) of the Regulation to include " any bonus, benefit, or gratuity, demanded or received for the use or occupancy of housing accommodations ". This definition obviously includes any commissions paid by the tenants in order to obtain a lease of residential housing accommodations, resulting from modification of commission practices in effect on the

maximum rent date. Section 9 of the Rent Regulation (8 Fed. Reg. 13919) specifically provides that " The maximum rents and other requirements provided in this regulation shall not be evaded, either directly or indirectly  *  *  *  by modification of the practices relating to payment of commissions or other charges ". In *Bowles* v. *Sisk* (144 F. 2d 163), a case which arose under the Emergency Price Control Act of 1942, it was held that a seller's agent who modified his method of doing business by adding his usual commission to the selling price of a commodity, was in fact charging more than the ceiling price, since the transfer of the commission charge from the seller to the purchaser freed the seller of his traditional obligation to pay the agent's commission.

It is likewise clear that the landlord is liable to the tenants because of his agent's violation of the Rent Regulation. The landlord has benefited in that its customary obligation for a commission has been transferred to the tenants.

A principal is liable for his agent's tort even though he be ignorant of its commission, or though it be contrary to his instructions. This rule applies even to criminal cases where compliance with a regulatory statute is made an absolute obligation of every person subject thereto. The Supreme Court stated this rule in *New York Central R. R.* v. *United States* (212 U. S. 481, 493), where it upheld the conviction of the railroad and of one of its assistant traffic managers for rebates granted by the latter in violation of the Elkins Act, saying: " And this is the rule when the act is done by the agent in the course of his employment, although wantonly or recklessly or against the express orders of the principal. In such cases the liability is not imputed because the principal actually participates in the malice or fraud, but because the act is done for the benefit of the principal, while the agent is acting within the scope of his employment in the business of the principal, and justice requires that the latter shall be held responsible for the damages to the individual who has suffered by such conduct."

The landlord is not free from liability because it collected none of the benefits of its agent's illegal act. In *People ex rel. Price* v. *Sheffield Farms Co.* (225 N. Y. 25, 29, 37), in discussing the conviction of an employer under the State child labor act, Judge CARDOZO held: " He (the employer) must neither create nor suffer in his business the prohibited conditions. The command is addressed to him. Since the duty is his, he may not escape it by delegating it to others  *  *  * . He breaks the command of the statute if he employs the child himself. He breaks it

equally if the child is employed by agents to whom he has delegated ' his own power to prevent ' ''.

To this, Judge CRANE added in his concurring opinion: '' He may be made liable  *  *  *  for acts committed by his servants without his knowledge or consent and against his direct prohibition.  As is stated in some of the cases he acts in these matters through his servants at his peril.''  Thus, any act committed within the scope of the agent's authority makes him, as well as the landlord, liable for the sanctions imposed by subdivision (e) of section 205 of the Emergency Price Control Act (U. S. Code, tit. 50, Appendix, § 925, subd. [e]).

I hold, therefore, that the tenants are entitled to recover fifty-four dollars as remedial damages and, in addition, the sum of twenty-five dollars as a reasonable attorney's fee, making a total of seventy-nine dollars; from which must be deducted the rent for September, 1944, in the sum of forty dollars, making a net award to the tenant of thirty-nine dollars.  The Clerk is directed to enter judgment accordingly.