Arthur Wachtel, J.
The tenant sues the landlord herein for alleged overcharge of rent and attorney’s fees and for the recovery of $80 which the plaintiff alleges was illegally paid as security. The first renting to the tenant was on May 25, 1955. It is conceded that the rent was due on the 25th of the month and that it was paid to the landlord in the amount of $80 for the months of May 25 to November 25 for a period of six months.
The defendant Harry Mantell entered into a contract for the purchase of the house in his own name and took title in the *403 name of the defendant Realtex, Inc. He acted as agent for the corporation and took care of the house, negotiated the lease and the rental in this ease, and collected the rent. There is a conflict in the testimony as to whether defendant received $160 upon the first renting, or simply $80. The tenant seeks to recover the said alleged additional $80 and claims that the same was illegally obtained as security in violation of section 65 of the State Rent and Eviction Regulations. On this issue the tenant has the burden of proof. He relies on a receipt which however specifies no amount, simply ‘' Received rent starting May 24,1955 to June 24,1955.” The landlord testified it was a receipt only for the first month’s rent of $80. The court finds the tenant has failed to sustain his burden of proof as to this issue and accordingly this claim is dismissed.
In respect of plaintiff’s claim for overcharge the defendant testified that it was specifically represented in the contract of sale with the prior owner that the apartment in question “ had been occupied by the owner until May of 1952 and had not been registered by reason of such fact since the owner was continuously in possession for a period of approximately 25 years.” It appears that a report of decontrol was filed with the rent commission in April, 1955. On August 25, 1955 an order was issued by the rent commission determining that the premises were under control in that the apartment ‘ ‘ became vacant prior to April 1, 1953 ” and fixing the maximum rent " pursuant to Section 36-0 of the rent regulations ” at $42 per month as of August 1, 1953, ‘ ‘ which amount is the maximum rent for the housing accommodation ”.
The plaintiff’s claim for overcharge is based upon subdivision 5 of section 11 of the State Residential Rent Law which provides: “ If any landlord who receives rent from a tenant violates a regulation or order prescribing the maximum rent with respect to the housing accommodations for which such rent is received from such tenant, the tenant paying such rent may, within one year from the date of the occurrence of the violation, except as hereinafter provided, bring an action against the landlord on account of the overcharge as hereinafter defined * * * As used in this section, the word ‘ overcharge ’ shall mean the amount by which the consideration paid by a tenant to a landlord exceeds the applicable maximum rent.”
The legislative intent has been specifically disclosed as to the meaning of the word “ overcharge.” It is specifically provided in subdivision 5 of section 11 that “ as used in this section, the word ' overcharge ’ shall mean the amount by which the *404 consideration paid by a tenant to a landlord exceeds the applicable maximum rent ” (italics supplied). The amount fixed by the rent commission in the case at bar at $42 per month is the “ applicable ” maximum rent. The defendant’s attorney argues that the plaintiff is entitled to an overcharge only for the period of three months of September, October and November, 1955 and that no overcharge may be recovered for the period prior to the issuance of the order of the rent commission fixing the maximum rent, upon the authority of Chick v. Glassheim (282 App. Div. 727 [2d Dept., 1953]). However, in that case the maximum rent for an unfurnished apartment was established in 1943 at $55 and was not adjusted prior to May 1, 1950 and in September, 1950 the apartment was leased to the plaintiff as a furnished apartment at a rent of $95. On May 29, 1952 the maximum rent was established at $78 as of May 1, 1950. In a summary proceeding- for nonpayment the tenant counterclaimed at the rate of $17 per month (the difference between $95 and $78). The Appellate Division, Second Department, held that inasmuch as the maximum rent for this apartment as an unfurnished apartment was established in 1943 at $55 the landlord could not by the process of renting it as a furnished apartment charge $95 without an order by the rent commission adjusting the rent, and there was an overcharge based on the $55 maximum. The tenant could not claim a violation of the law with respect to the $78 order prior to the date of issuance of the said order, but he could claim a violation with respect to the $55 order. The statement of the Appellate Division, Second Department, that “ no right of action for its violation [of the order of May 29, 1952 determining the amount of rent as of May 1, 1950] could be predicated on acts of acceptance of rent prior to its issuance ” (p. 727) is the basis of the defendant’s contention.
In the recent case of Felton v. Leo-Dor Realty Corp. (285 App. Div. 460) the Appellate Division, First Department, held that where a landlord has failed to register housing accommodations and the rent commission thereafter determined the maximum rent as of the date of the first renting pursuant to subdivision (c) of section 36 of the rent regulations, the tenant could recover overcharges for the period between the date the order was made effective and the date it was issued. The Appellate Division, First Department, pointed out that the provision of chapter 443 of the Laws of 1951, amending subdivision 6 of section 4 of the State Residential Rent Law, prohibiting retroactivity applies only to an order increasing or decreasing the maximum rent, and *405 not to an order fixing the maximum rent. In this respect the Felton case may be reconciled with the case of Chick v. Glassheim (supra).
The case of Chick v. Glassheim was followed in May, 1954 by the Appellate Term, Second Department, in Taylor v. Mabry (136 N. Y. S. 2d 722) which reversed the decision of the Municipal Court, Borough of Queens (127 N. Y. S. 2d 905) on the authority of Chick v. Glassheim, and referred to Kozlowski v. Krzysko (205 Misc. 190). As appears from the opinion of the Municipal Court (127 N. Y. S. 2d 905) the order in this case was issued pursuant to subdivision (c) of section 36 of the rent regulations, and the court allowed the tenant’s claim for overcharge for the retroactive period, and specifically distinguished an order fixing the maximum rent pursuant to subdivision (c) of section 36 from an order adjusting the maximum rent pursuant to section 32 of the Bent Begulations. As indicated above on this basis Chick v. Glassheim would not be applicable. The case of Kozlowski v. Krzysko, referred to by the Appellate Term, Second Department, in Taylor v. Mabry, was decided by the County Court of Montgomery County in February, 1954, but the court in that case relied upon subdivision 6 of section 4 of the rent control law which applies only to an order increasing or decreasing the maximum rent — not to an order fixing the rent — and thus would not be applicable. Furthermore, the court in the Koslowski case relied upon a statement of the Court of Appeals in Saltser & Weinsier, Inc., v. McGoldrick (295 N. Y. 499, 507) as follows: “ ‘ A law is never to have retroactive effect, unless its express letter or clearly manifested intention requires that it should have such effect. If all its language can be satisfied by giving it prospective operation, it should have such operation only.’ ”
However, subdivision (c) of section 36 of the rent regulations specifically expresses the clearly manifested intention of the rent regulations which are adopted and promulgated pursuant to the powers granted to the rent commission by the rent control law, that the maximum rent found by the rent commission pursuant to such regulations should have retroactive effect. Where no registration statement has been filed, or where by the regulations the administrator issues an order fixing a maximum rent, subdivision (c) of section 36 specifically provides “ Such order shall fix the maximum as of May 1, 1950, or the date of first renting, whichever is later ” (italics supplied).
All question as to the applicability of Chick v. Glassheim to an order fixing the rent as distinguished from an order adjusting *406 the rent was ruled out in the case of Rossetidis v. Orsati (3 Misc 2d 167) in the Municipal Court, Borough of Queens, March, 1956 wherein the court disallowed overcharge for the period prior to an order fixing rent for an unregistered apartment, upon the authority of Chick v. Glassheim (supra), Taylor v. Mabry (supra) and Saltsier & Weinsier, Inc., v. McGoldrick (supra) and the court specifically refused to follow the decision of the Appellate Division, First Department, in Felton v. Leo-Dor Realty Corp. (supra).
The reasoning of the second department cases is that subdivision 5 of section 11 of the rent control law provides for an action for overcharge where the landlord ' ‘ violates ’ ’ a regulation or order prescribing the maximum rent. Since there was no regulation or order in existence prior to the order in question, there could be no “ violation.” However, the difficulty with this reasoning is that it relies only on the first sentence of subdivision 5 of section 11 of the rent control law and fails to consider the language inserted later defining “ overcharge,” and also the language of section 32 and section 36 of the rent regulations, and subdivision 6 of section 4 of the rent control law. In connection with the promulgation of section 36 of the rent regulations, subdivision 7 of section 4 of the rent control law, significantly provides: ‘ ‘ Regulations, orders, and requirements under this act may contain such provisions as the commission deems necessary to prevent the circumvention or evasion thereof.” Furthermore, the legislative intent as set forth in section 1 of the rent control law is clearly defined and the Legislature has specifically declared among other things ' ‘ that unless residential rents and evictions are regulated and controlled, disruptive practices and abnormal conditions will intensify inflationary pressures and otherwise produce serious threats to the public health, safety and general welfare; that to prevent such perils to health, safety and welfare, preventive action by the legislature is imperative; that such action is necessary in order to prevent exactions of unjust, unreasonable and oppressive rents and rental agreements and to forestall profiteering, speculation and other disruptive practices tending to produce threats to the public health ”.
The obvious inequity of a contrary result was clearly set forth by Mr. Justice Bastow in the Felton case (285 App. Div. 460, 464, supra) when he stated “ A contrary holding would be a plain invitation to landlords to fail to register properties, collect overcharges until discovered and then leave the tenant *407 without remedy to recapture the overpayments. ’ ’ So in the case at bar, a contrary holding would be a plain invitation to landlords to file statements of decontrol, collect overcharges until discovered and then leave the tenant without remedy to recapture those payments. Landlords have an adequate opportunity to obtain a determination pursuant to section 36 as to whether their premises are or are not under control. In the opinion of the court, a contrary holding would not be in accordance with the intent of the Legislature.
If the second department rule is deemed to be in conflict with the first department rule, this court must follow the first department rule. In any event, the court believes that the rule laid down by the Appellate Division, First Department, is the proper rule. With respect to the question as to whether both defendant Mantell individually, and the defendant corporation may be held liable for the overcharge, the court finds in the affirmative (Kurland v. Bukspan, 184 Misc. 590; see Cha-Kir Realty Corp. v. Sanchez, 183 Misc. 427; Restatement, Agency, § 261).
The court finds that the violation of the order in question was neither willful nor the result of failure to take practicable precautions against the occurrence of the violation, and accordingly, plaintiff’s claim for treble damages is dismissed (cf. Bona v. Tabone, 103 N. Y. S. 2d 432; Powell v. Park Lex Realty Corp., 280 App. Div. 136).
Accordingly the court finds in favor of the plaintiff upon his claim for overcharge in the amount of $228. Defendant is allowed the sum of $210 the amount of rent conceded unpaid as a setoff, leaving a balance in favor of the plaintiff in the sum of $18. The court further finds in favor of the plaintiff in respect of his claim for attorney’s fees in the amount of $100.
Judgment for the plaintiff accordingly.