Kirsten ERICSON, Dacia Kornechuk, Dr. Paul Ericson, Linda Ericson, Edwina Kornechuk, and John Kornechuk, Plaintiffs,

v.

SYRACUSE UNIVERSITY, Kenneth Shaw, Jesse Dwire, Jake Crouthamel, Robert Gifford, Janet Kittel, Neil B. Strodel, Eleanor Gallagher, Louis Marcoccia, Robert S. Pickett, Colleen O. Bench, Nancy R. Mudrick, and Louis R. Walker, Jr., Defendants.

No. 98 Civ. 3435(JSR).

United States District Court, S.D. New York.

Jan. 25, 1999.

William Dealy, Alan Trachtman, New York City, NY, for plaintiffs.

Michael Delikat, Lisa McClelland, Daniel Murphy, New York, NY, for defendants.

### MEMORANDUM ORDER

RAKOFF, District Judge.

In a ten-count amended complaint, plaintiffs Kirsten Ericson and Dacia Kornechuk, two former members of the Syracuse University women's tennis team, together with their parents, allege that their former coach, defendant Jesse Dwire, sexually harassed them over approximately a three-year period beginning in the Fall of 1994. They further allege that after they lodged formal complaints with Syracuse University in January 1997, the University and its agents concocted a "sham" investigatory proceeding to conceal the extent of Dwire's misconduct, which plaintiffs allege goes back more than 20 years. Plaintiffs allege that because of these and other activities, Dwire, the University, and various University employees and agents violated Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq. ("Title IX"); the Violence Against Women Act,

42 U.S.C. § 13981 ("VAWA"); Section 1985(3) of Title 42, U.S.C. ("Section 1985(3)"); and various New York State laws.

On October 5, 1998, defendants moved under Fed.R.Civ.P. 12(c) for the entry in their favor of judgment on the pleadings with respect to: "(1) those portions of Counts 1, 2 and 3 of the Amended Complaint that address the University's investigation and hearing of Plaintiffs' claims because Title IX does not provide a private right of action for improper or insufficient hearing procedures; (2) Count 4 because Defendants, as employees of the University, cannot act together to commit a conspiracy under Section 1985; ... (3) Count 5 because all claims under the VAWA are barred by the applicable one-year statute of limitations, ... [and (4) ] Count 8 in favor of Defendants Strodel, Pickett, Bench, Mudrick and Walker (collectively, the Post–Charge Defendants) because the allegations in the Amended Complaint regarding the steps those Defendants took pursuant to the terms of the Policy to investigate and resolve Kirsten's and Dacia's charges of sexual harassment cannot rise to the level of intentional infliction of emotional distress [and] further [because] Plaintiffs cannot use the common-law theory of intentional infliction of emotional distress to circumvent Title IX, when Congress did not create a private right of action for such claims." Defs.' Mem. of Law at 3–4. Confirming its prior telephonic advice to counsel, the Court hereby denies the first prong of defendants' motion, grants the second prong, denies the third prong in most respects, and, as to the fourth prong, grants the motion as to defendants Pickett, Bench, Mudrick, and Walker, and denies the motion as to defendant Strodel.

■ (1) As to the first prong of the motion, the parties agree that, under the Supreme Court's recent decision in *Gebser v. Lago Vista Independent School District,* 524 U.S. 274, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998), a student who has been the victim of sexual harassment by an employee of an institution subject to Title IX may not bring a private damages claim against the institution "unless an official of the [institution] who at a minimum has authority to institute corrective measures on the [institution's] behalf has actual notice of, and is deliberately indifferent to, the [employee's] misconduct." *Id.* at 1992. On its face, the complaint appears to satisfy this standard because it alleges, *inter alia,* that some or all of those who investigated and heard the charges against Dwire not only had actual notice that Dwire had been harassing female student-athletes for a period of 20 years but also conspired to conduct a "sham" investigation and hearing in order to conceal the full extent of Dwire's misconduct. *See* First Amended Complaint at ¶¶ 50–54, 56–60, 348–533.

Defendants nonetheless contend that these allegations fail to state a cognizable Title IX claim because of the Supreme Court's statement in *Gebser* that an institution's "failure to promulgate a grievance procedure does not itself constitute discrimination under Title IX," *Gebser,* 524 U.S. at ——, 118 S.Ct. at 2000. Defendants argue that "If the failure to have policies and procedures is not privately actionable under Title IX, then, *a fortiori,* the types of claims set forth in Counts 1, 2 and 3 of the Amended Complaint challenging the adequacy of the remedial action taken by the University and its agents (*e.g.,* hearing panel members and the director of human resources) pursuant to its published policy, are not subject to a private right of action." Defts.' Mem. of Law at 6.

■ Defendants' conclusion, however, is not an instance of "*a fortiori* " but rather of *non sequitur.* The mere failure of an institution to promulgate a grievance procedure for dealing with discrimination does not necessarily imply its knowledge of any given instance of discrimination. By contrast, the purposeful failure of an official with actual knowledge of an employee's discrimination and the authority to remedy the misconduct to adequately respond is tantamount to "an official decision by the [institution] not to remedy the violation," *Gebser,* 524 U.S. at ——, 118 S.Ct. at 1999, and therefore actionable. *Id. See also, e.g., Bruneau ex rel. Schofield v. South Kortright Central School District,* 163 F.3d 749, 759 (2d Cir.1998) (high school student can recover from school district under Title IX if the district had actual notice of and was deliberately indifferent to teacher's discrimination); *Morse v.*

*Regents of the University of Colorado*, 154 F.3d 1124, 1129 (10th Cir.1998) (allegation that university "knew of harassment . . . and did not respond adequately" is sufficient to state claim under Title IX and *Gebser* ). Accordingly, the first prong of defendants' motion must be denied.

■ (2) With respect to the second prong of defendants' motion, defendants argue that the fourth count of the complaint, in which plaintiffs allege that the defendants conspired together to violate plaintiffs' civil rights in violation of 42 U.S.C. § 1985(3), is barred by the familiar doctrine that a corporation cannot conspire with itself—or, more precisely, that since a corporation or other institution (like Syracuse University) can only act through its agents, a claim that the agents collectively agreed to take some unlawful action in the name and on behalf of the corporation is simply another way of saying that the corporation acted unlawfully and therefore does not satisfy the basic requirements of a conspiracy. *See Girard v. 94th Street and Fifth Avenue Corp.*, 530 F.2d 66, 70 (2d Cir.1976) (dismissing on this basis a § 1985(3) claim alleging conspiracy to discriminate).

Plaintiffs respond that this intracorporate conspiracy bar is inapplicable here because two of the alleged conspirators—Louis DiLorenzo (an attorney) and Stephanie Osborne (a student)—were not employees of the University. However, the allegations against DiLorenzo and Osborne, so far as the Section 1985(3) count is concerned, relate not to actions they took in their individual capacities but rather to actions they allegedly took in their positions as persons given official power to help formulate or implement University policy. Specifically, the charge against DiLorenzo is that he used his position as an attorney retained by the University to assist the panel hearing the charges against Dwire to further the University's alleged scheme to conceal the truth of Dwire's misconduct. *See* First Amended Complaint at ¶¶ 436–466. Similarly, Osborne is charged with having used her position as a student member of

that hearing panel to assist the same cover-up on behalf of the University. *See* First Amended Complaint at ¶¶ 415–416, 471–484. Thus, they are charged with misconduct taken in their temporary roles as agents of the University.

■ The intracorporate conspiracy doctrine applies as much to individuals acting as the corporation's temporary agents as it does to full-time employees. *See, e.g., Agugliaro v. Brooks Brothers, Inc.*, 802 F.Supp. 956, 962 (S.D.N.Y.1992); *Carter v. City of Hartford*, 1998 WL 823044, at *4 (D.Conn.1998). Nor is there any allegation in the complaint to suggest that any of the alleged co-conspirators were acting outside the scope of this temporary agency in furthering what the complaint alleges was a University-directed cover-up. *See* First Amended Complaint at ¶ 59.[1] Accordingly, plaintiffs' Section 1985(3) claim must be dismissed.

(3) The third prong of the instant motion seeks to dismiss as time-barred plaintiffs' fifth count, which accuses Dwire of inflicting physical injury on plaintiffs Kirsten Ericson and Dacia Kornechuk in violation of the Violence Against Women Act ("VAWA"), 42 U.S.C. § 13981, during the years 1994 through 1996. VAWA provides a civil cause of action to victims of gender-motivated crimes of violence. However, the text of VAWA itself contains no express statute of limitations: "a void which is commonplace in federal statutory law." *Board of Regents v. Tomanio*, 446 U.S. 478, 483, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980). Accordingly, the Court must look to the "most appropriate or analogous state statute of limitations." *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987).

■ Defendants suggest that VAWA claims are most analogous to state law causes of action for assault or battery. But the text of VAWA, its legislative history, and its place in the context of other federal laws all make clear that Congress did not enact VAWA as a supplement to state laws prohibiting violent crime. Instead, Congress' stated purpose

---

1. Plaintiffs' other responses to defendants' intracorporate conspiracy defense are not only meritless on their face but also are unsupported by any reference to any non-conclusory allegations of the complaint.

was to "protect the civil rights of victims of gender motivated violence ... by establishing a Federal civil rights cause of action." 42 U.S.C. § 13981(a). Accordingly, a VAWA cause of action is most analogous to a personal injury claim. *See, e.g., Goodman v. Lukens Steel Co.,* 482 U.S. 656, 661, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987) (state statute of limitations for personal injury actions supplies the appropriate limitations period for racial discrimination claims brought under 42 U.S.C. § 1981); *Morse v. University of Vermont,* 973 F.2d 122, 126–127 (2d Cir.1992) (following *Goodman* in applying state personal injury statute of limitations to disability discrimination claims brought under § 504 of the Rehabilitation Act).

■ Under New York law, that limitations period is three years, N.Y.C.P.L.R. 214. The instant lawsuit was filed on May 14, 1998. Accordingly, defendants' motion to dismiss the VAWA claim is denied except as to any portion of that claim premised on acts of violence occurring prior to May 14, 1995, as to which the motion is granted.

(4) Finally, the Court grants in part and denies in part the fourth prong of defendant's motion seeking judgment in favor of the "Post–Charge Defendants" (Strodel, Pickett, Bench, Mudrick and Walker) on plaintiffs' eighth count, which accuses all defendants of intentional infliction of emotional distress in violation of New York State law.

■ Under New York law, a claim for intentional infliction of emotional distress requires conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Howell v. New York Post Co., Inc.,* 81 N.Y.2d 115, 596 N.Y.S.2d 350, 353, 612 N.E.2d 699 (N.Y.1993) (quoting *Murphy v. American Home Prods. Corp.,* 58 N.Y.2d 293, 461 N.Y.S.2d 232, 236, 448 N.E.2d 86 (N.Y.1983)). However, even though this high standard ultimately places a heavy burden on plaintiffs, at the pleading stage such claims may not be dismissed unless it appears beyond doubt that plaintiffs can prove no set of facts that would entitle them to such relief. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

■ So far as the Post–Charge Defendants are concerned, the premise of plaintiffs' claims for intentional infliction of emotional distress is that, despite their alleged knowledge of Dwire's misconduct, they "never punished [Dwire] for his sexual harassment of Kirsten and Dacia," Pls.' Mem. of Law in Opp'n to Defs.' Mot. at 18. The Complaint, however, acknowledges that the four hearing panel members—Pickett, Bench, Mudrick and Walker—recommended a two-year suspension. While plaintiffs may contest the severity of a two-year suspension, such punishment cannot be deemed so insubstantial in relation to Dwire's alleged misconduct as to be considered "outrageous" or "beyond all possible bounds of decency." Plaintiffs' counsel implicitly admitted as much at oral argument when he conceded that his clients would likely not have pursued this particular cause of action had the hearing panel's recommended punishment actually been imposed. *See* Transcript, October 5, 1998.

■ By contrast Strodel, Syracuse University's Vice President for Human Resources, is alleged to have wrongfully and in bad faith rejected the recommendation of a two-year suspension and chosen instead, in bad faith and for ulterior motives, to impose a suspension of three-and-a-half months, served largely during the summer of 1997. It cannot be said at this preliminary stage that plaintiffs are unable to adduce facts that would render such misconduct so outrageous as to warrant relief for intentional infliction of emotional harm. Accordingly, defendants' motion to dismiss plaintiffs' claim for intentional infliction of emotional distress is granted with respect to defendants Pickett, Bench, Mudrick and Walker and denied with respect to defendant Strodel.[2]

In summary, the Court resolves defendants' Rule 12(c) motion by dismissing Count

---

**2.** Plaintiffs' fall-back argument that this state law claim is effectively preempted by Title IX finds no support in the statutory language, legislative history, or relevant precedent.

4 in its entirety, dismissing Count 5 only as to any cause of action grounded on events occurring prior to May 14, 1995, dismissing Count 8 as to defendants Pickett, Bench, Mudrick and Walker, and otherwise denying the motion.

SO ORDERED.