Symphony GRACE, Plaintiff,

v.

THOMASON NISSAN, an Oregon Corporation, and David Campbell, Defendants.

No. 98–177–HU.

United States District Court, D. Oregon.

Aug. 16, 1999.

J. William Savage, Angela J. Hart, Rieke & Savage, P.C., Portland, Oregon, for plaintiff.

Douglas R. Andres, Bullivant Houser & Bailey, Portland, Oregon, for defendant Thomason Nissan.

Peter R. Mersereau, Mersereau & Shannon, Portland, Oregon, for defendant Campbell.

## ORDER

PANNER, District Judge.

Magistrate Judge Dennis J. Hubel filed his Findings and Recommendations on

July 7, 1999. The matter is now before me pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed.R.Civ.P. 72(b). When either party objects to any portion of the Magistrate Judge's Findings and Recommendations, the district court must make a *de novo* determination of that portion of the Magistrate Judge's report. 28 U.S.C. § 636(b)(1)(C); *McDonnell Douglas Corp. v. Commodore Business Machines, Inc.*, 656 F.2d 1309, 1313 (9th Cir.1981), *cert. denied*, 455 U.S. 920, 102 S.Ct. 1277, 71 L.Ed.2d 461 (1982).

Defendant Campbell has filed timely objections. I have, therefore, given the file of this case a *de novo* review. I adopt Magistrate Judge Hubel's Findings and Recommendations.

Thomason Nissan's motion to dismiss plaintiff's fifth claim for relief for failure to state a claim (# 43–1) is granted; Campbell's motion to dismiss plaintiff's sixth claim for relief for failure to state a claim (# 59–1) is denied. Plaintiff has thirty (30) days from the date of this Order in which to file a third amended complaint.

Thomason Nissan's alternative motion to dismiss on the basis that VAWA is unconstitutional (# 43–2) is denied as moot; Campbell's alternative motion to dismiss on the basis that VAWA is unconstitutional (# 59–2) is held in abeyance pending receipt of notice from the United States regarding its intent to intervene in accordance with 28 U.S.C. § 2403(a).

The Clerk of the Court is directed to send a copy of this Order to United States Attorney Kristine Olson.

IT IS SO ORDERED.

## FINDINGS AND RECOMMENDATION

Hubel, United States Magistrate Judge.

Plaintiff brings this action against her former employer, Thomason Nissan, and David Campbell. In her fifth claim for relief, plaintiff alleges that Thomason Nis-

san violated the Violence Against Women Act (42 U.S.C. § 13981) (VAWA) by virtue of the conduct of its employee, David Campbell. In her sixth claim for relief, plaintiff brings a VAWA claim directly against defendant Campbell.

Thomason Nissan moves to dismiss plaintiff's fifth claim for relief on the basis that liability under VAWA cannot be premised upon the doctrine of respondeat superior. In the alternative, Thomason Nissan seeks dismissal of the claim on the basis that VAWA is unconstitutional. Campbell moves to dismiss plaintiff's sixth claim for relief on the basis that the claim is time barred. In the alternative, Campbell joins in Thomason Nissan's constitutional challenge.[1]

## *BACKGROUND*

On or about February 15, 1996, plaintiff was hired by Thomason Nissan as a sales consultant. In January, 1997, David Campbell became plaintiff's "direct supervisor." Shortly thereafter, the "sales staff," including plaintiff and Campbell, were awarded a trip to Reno due to a successful sales month. During the course of the trip, Campbell allegedly sexually assaulted plaintiff by laying "on top of her with his legs spread on either side of her body;" kissing her; "pulling at her clothes and touching an[d] groping her body including but not limited to her breasts and vagina;" attempting "to penetrate[ ] her vagina with his hands;" and masturbating in front of her.

Following the trip, plaintiff complained of Campbell's conduct to defendant's Office Manager and General Manager. "Plaintiff is informed and believes ... that other female employees, previous to plaintiff, have also complained about Campbell's behavior."

As a result of plaintiff's complaints, Campbell was transferred to "another lo-

---

1. In order to avoid "unnecessarily" determining the constitutionality of VAWA, I first consider whether plaintiff has stated a VAWA claim against defendant. *See Jean v. Nelson*, 472 U.S. 846, 854, 105 S.Ct. 2992, 86 L.Ed.2d 664 (1985); *Spector Motor Serv. v. McLaughlin*, 323 U.S. 101, 105, 65 S.Ct. 152, 89 L.Ed. 101 (1944).

cation" but plaintiff continued to have contact with Campbell as "part of her job and in order to effectively perform her job." Plaintiff subsequently requested a transfer to another location where she would not have contact with Campbell. The request was denied.

On or about June 6, 1997, plaintiff requested a leave of absence and the payment of vacation pay. Defendant allegedly informed plaintiff that she would be paid only if she agreed not to sue defendant. Plaintiff refused to sign a release and, on July 16, 1998, resigned her position.

On April 14, 1999, plaintiff filed her second amended complaint naming Campbell as a defendant for the first time. Plaintiff stipulates that the alleged sexual assault by Campbell occurred more than two years prior to the filing of her second amended complaint. (Campbell's Supporting Memo. at 2.)

### STANDARDS

"In federal court, dismissal for failure to state a claim is proper 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Cervantes v. City of San Diego,* 5 F.3d 1273, 1274 (9th Cir. 1993) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)); *Tanner v. Heise,* 879 F.2d 572, 576 (9th Cir.1989). In making this determination, I accept all allegations of material fact as true and construe the allegations in the light most favorable to the nonmoving party. *Tanner,* 879 F.2d at 576.

### DISCUSSION

The Violence Against Women Act was enacted "to protect the civil rights of victims of gender motivated violence and to promote public safety, health, and activities affecting interstate commerce by es-

tablishing a Federal civil rights cause of action for victims of violence motivated by gender." 42 U.S.C. § 13981(a).

In language reminiscent of the Civil Rights Act of 1871, Congress created a private right of action for victims of gender-motivated violence:

> A person (including a person who acts under color of any statute, ordinance, regulation, custom, or usage of any State) who commits a crime of violence motivated by gender and thus deprives another of the right declared in subsection (b) of this section shall be liable to the party injured, in an action for the recovery of compensatory and punitive damages, injunctive and declaratory relief, and such other relief as a court may deem appropriate. 42 U.S.C. § 13981(c).[2]

### I. *Thomason Nissan's Motion to Dismiss.*

Thomason Nissan moves to dismiss plaintiff's VAWA claim on the basis that (1) "[n]o reported case has expressly held that an employer can be vicariously liable under the VAWA;" and (2) "[t]he plain language of the Act belies any contention that an employer could be vicariously liable under the circumstances alleged" in the instant proceeding.

The question of whether an employer may be held liable under § 13981(c) for the conduct of its employees appears to be a question of first impression. *See Braden v. Piggly Wiggly,* 4 F.Supp.2d 1357, 1362 (M.D.Ala.1998) (noting absence of cases addressing whether an employer may be held liable under VAWA for acts committed by its employees, much less what standard of liability should be used to hold the employer accountable).

---

**2.** Subsection (b) of § 13981 defines the substantive right protected under VAWA as the right "to be free from crimes of violence motivated by gender." A crime of violence, in turn, is defined as "an act or series of acts that would constitute a felony against the person or that would constitute a felony

against property if the conduct presents a serious risk of physical injury to another, and that would come within the meaning of State or Federal offenses described in section 16 of Title 18." 42 U.S.C. § 13981(d)(2)(A); *see also* 42 U.S.C. § 13981(d)(2)(B).

The starting point in every case involving statutory construction is the language of the statute itself. *See International Primate Protection League v. Administrators of Tulane Educ. Fund*, 500 U.S. 72, 79, 111 S.Ct. 1700, 114 L.Ed.2d 134 (1991); *United States v. Ron Pair Enter., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). In construing § 13981(c), I "read the statutory language in its ordinary and natural sense, and if doubts remain, resolve them in the light, not only of the policy intended to be served by the enactment, but, as well, by all other available aids to construction." *United States v. Cooper Corp.*, 312 U.S. 600, 605, 61 S.Ct. 742, 85 L.Ed. 1071 (1941).

## A. "Persons"—Defined.

### 1. *The Dictionary Act.*

As indicated in the text quoted above, VAWA creates a private right of action against any "person" who commits a gender-motivated crime of violence. The term "person" is not defined in the Act. However, "by 1871, it was well understood that corporations should be treated as natural persons for virtually all purposes of constitutional and statutory analysis." *Monell v. Dept. of Soc. Serv. of New York*, 436 U.S. 658, 687, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *see also Wilson v. Omaha Indian Tribe*, 442 U.S. 653, 666–67, 99 S.Ct. 2529, 61 L.Ed.2d 153 (1979) (Congress presumed to know that term "person" "would be interpreted to cover artificial entities as well as individuals"); *see also* David Frazee et al., Violence Against Women § 11:8, at 11–11 (1998) (VAWA language suggests corporate defendants may be subject to suit since most states consider corporations to be "persons"). More importantly, Congress has expressly provided that "[i]n determining the meaning of any Act of Congress, unless the context indicates otherwise ... the word[ ] 'person' ... includes corporations." 1 U.S.C. § 1 (1997).

■ I am not convinced that the "context indicates" that Congress intended

"persons" to be used in § 13981(c) in a manner contrary to that provided in 1 U.S.C. § 1. In so concluding, I consider the text of § 13981, the text of related Acts of Congress, and search for contextual features indicating that "persons" refers only to individuals. *See Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 199, 113 S.Ct. 716, 121 L.Ed.2d 656 (1993).

Neither the text of § 13981 nor its "contextual features" dictates the conclusion that "persons" refers only to individuals. On the contrary, at the time VAWA was enacted, it was well settled that a corporation could be held criminally liable for the conduct of its agents and employees. *See New York Cent. & Hudson River R.R. v. United States*, 212 U.S. 481, 492–93, 29 S.Ct. 304, 53 L.Ed. 613 (1909) ("modern authority" recognizes corporate criminal liability); *see also* Charles E. Torcia, 1 Wharton's Criminal Law § 49, at 311–17 (15th ed.1993).

Although courts historically questioned the appropriateness of corporate liability in the context of violent crimes (*see United States v. John Kelso Co.*, 86 F. 304, 306 (N.D.Cal.1898); *Stewart v. Waterloo Turn Verein*, 71 Iowa 226, 32 N.W. 275, 276 (1887)), more recently courts have concluded that corporations may be guilty of violent crimes as well as offenses requiring proof of specific intent. *See Vaughan and Sons, Inc. v. State*, 737 S.W.2d 805 (Tex. Crim.App.1987) (negligent homicide); *Commonwealth v. Penn Valley Resorts, Inc.*, 343 Pa.Super. 387, 494 A.2d 1139 (1985) (involuntary manslaughter); *Granite Constr. Co. v. Superior Court of Fresno*, 149 Cal.App.3d 465, 197 Cal.Rptr. 3 (1983) (manslaughter); *State v. Adjustment Dep't Credit Bureau, Inc.*, 94 Idaho 156, 483 P.2d 687 (1971) (extortion).[3] Hence, the fact that liability under § 13981(c) is premised upon the commission of a crime of violence does not indicate that Congress intended to limit liability to individuals.

---

**3.** The constitutionality of corporate criminal liability is settled. *New York Cent. & Hudson*

*River R.R. Co.*, 212 U.S. at 496–97, 29 S.Ct. 304.

Consideration of "related" Acts of Congress further supports the presumptive definition of "persons." [4] For instance, the Supreme Court has held that "person," as used in 42 U.S.C. § 1983, includes municipal corporations. *See Monell*, 436 U.S. at 690, 98 S.Ct. 2018. Similarly, the term "person," as used in 42 U.S.C. § 1985(3), has been construed to include corporations although there is some debate as to whether a corporation, together with its employees, constitutes a conspiracy of "two or more persons." *Compare Benningfield v. City of Houston*, 157 F.3d 369, 378 (5th Cir.1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 1457, 143 L.Ed.2d 543 (1999) *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 841 (6th Cir.1994), *cert. denied*, 514 U.S. 1066, 115 S.Ct. 1698, 131 L.Ed.2d 560 (1995) and *Brever v. Rockwell Intern. Corp.*, 40 F.3d 1119, 1126–27 (10th Cir. 1994); *see also Scott v. Ross*, 140 F.3d 1275, 1284 (9th Cir.1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 1285, 143 L.Ed.2d 378 (1999) (vicarious liability properly imposed upon cult awareness organization under § 1985(3)). Finally, Title VII includes a definitional provision defining "person" to include corporations. 42 U.S.C. § 2000e(a). In sum, I conclude that neither the text of VAWA nor any of its "contextual features" supports a conclusion that "persons" is limited to individuals.

### 2. *Legislative History.*

Adoption of the definition of "persons" set forth in the Dictionary Act is also consistent with VAWA's legislative history. *See Monell*, 436 U.S. at 685–90, 98 S.Ct. 2018 (considering both Dictionary Act and legislative history in defining "person" as used in 42 U.S.C. § 1983). Reports from both the House and Senate indicate that § 13981 was intended to extend existing civil rights protections to gender-motivated violence. (S.Rep. No. 103–138 at 48–49, 51 & 64; House Conf.Rep. No. 103–711, reprinted at 1994 U.S.C.C.A.N. 1839, 1853; *see also* 42 U.S.C. § 13981(a).)

Although Senator Joseph Biden, the principal proponent of the bill, states that the Act "is intended to apply *primarily* against individuals" [5]—often individuals with a relationship to the victim [6]—I have located no legislative history indicating that Congress intended to exclude private corporations from liability. Senator Biden contemplated that the Act would extend to municipal corporations in the same manner as has been judicially recognized under 42 U.S.C. § 1983.[7] It would be nonsensical to conclude that "persons" includes municipal corporations acting under color of state law, but does not include corporations acting privately.[8]

### B. Scope of Corporate Liability.

Having defined "person" to include corporations, the plain language of the statute imposes liability upon a corporation, including a corporation acting under color of state law, which commits a crime of violence and thus deprives another of

---

4. VAWA consists of a series of Related Acts: the Safe Streets for Women Act of 1994; the Safe Homes for Women Act of 1994; the Civil Rights Remedies for Gender–Motivated Violence Act; the Equal Justice for Women in the Courts Act of 1994; Violence Against Women Act Improvements; National Stalker and Domestic Violence Reduction; and Protection for Battered Immigrant Women and Children. Pub.L. No. 103–322, 108 Stat. 1902 (1994). Consideration of the foregoing Acts does not shed light upon the proper interpretation of the term "persons" as used in § 13981(c). However, legislative history indicates that § 13981 was modeled after 42 U.S.C. §§ 1981, 1983, 1985(3) and Title VII. Senate Rep. No. 103–138 at 64 (1993). Hence, I

consider the statutory definitions adopted under those "related" Acts of Congress.

5. *See* S.Rep. No. 103–138 at 53 (1993) (emphasis added).

6. *See* 42 U.S.C. § 13981(d)(2)(B) (defining "crime of violence" to include conduct which, but for the relationship between the victim and offender, would constitute a felony under state or federal law).

7. *See* S.Rep. No. 103–138 at 53 (1993).

8. In this respect, VAWA differs from § 1983 in that it applies to both private conduct and conduct under color of state law.

the right to be free from gender-motivated violence. The foregoing language does not suggest the application of respondeat superior liability. *Cf. Monell*, 436 U.S. at 692, 98 S.Ct. 2018. This is particularly true in light of the fact that Congress borrowed the "color of state law" language from § 1983 and offered "no hint of an intent to overturn the well-known 'policy or custom' requirement in § 1983 suits against state actors." *See Federation of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1215 (9th Cir.1996) (concluding that liability under § 1981 cannot be premised upon respondeat superior based, in part, upon the similarity of language between 1981(c) and § 1983).

 Accordingly, I conclude that liability under § 13981(c) cannot be premised upon the doctrine of respondeat superior.[9] Instead, liability will arise only upon a showing that the corporation officially sanctioned or ordered the criminal conduct. In more fully defining corporate liability under § 13981(c), I look to the body of case law regarding municipal liability under § 1983 requiring proof of a policy or custom. *See Monell*, 436 U.S. at 694, 98 S.Ct. 2018; *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385–89, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121–23, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 477–80, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 817–20, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985).

The most analogous application of the *Monell* "policy and custom" requirement appears in cases addressing isolated constitutional violations. In those cases, the Court has held that municipal liability is appropriate if (1) the person causing the violation has final policymaking authority with respect to the subject matter in question; (2) the final policymaker "ratified" a subordinate's actions; or (3) the final policymaker acted with deliberate indifference to the subordinate's constitutional violations. *Christie v. Iopa*, 176 F.3d 1231, 1235–1241 (9th Cir.1999) (citing *Praprotnik*, 485 U.S. at 123 & 127, 108 S.Ct. 915 and *City of Canton*, 489 U.S. at 390, 109 S.Ct. 1197); *see also Fuller v. City of Oakland*, 47 F.3d 1522, 1534 (9th Cir. 1995); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 482–83, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986).

The foregoing standard of liability is similar to the standard of corporate criminal liability set forth in the American Law Institute's Model Penal Code:

(1) A corporation may be convicted of the commission of an offense if:

 * * * * * *

 (c) the commission of the offense was authorized, requested, commanded, performed or recklessly tolerated by the board of directors or by a high managerial agent acting in behalf of the corporation within the scope of his office or employment. American Law Institute, Model Penal Code § 2.07(c).[10]

---

9. Hence, I do not find the federal common law regarding the imposition of corporate criminal liability on the basis of respondeat theory to be controlling. *See United States v. Basic Constr. Co.*, 711 F.2d 570, 573 (4th Cir.), *cert. denied*, 464 U.S. 956, 104 S.Ct. 371, 78 L.Ed.2d 330 (1983); *United States v. Cincotta*, 689 F.2d 238, 241–42 (1st Cir.), *cert. denied*, 459 U.S. 991, 103 S.Ct. 347, 74 L.Ed.2d 387 (1982); *United States v. Beusch*, 596 F.2d 871, 877–78 (9th Cir.1979); *see also* 35 Am.Cr.L.Rev. 549, 550 (1998).

10. At least twenty one states have adopted a version of Model Penal Code 2.07(c)(3). *See* Ariz.Rev.Stat. § 13–305(A)(2); Ark.Code Ann.

§ 5–2–502(a)(2); Colo.Rev.Stat.Ann. § 18–1–606(1)(b); Del.Code Ann. tit. 11 § 281(2); Ga. Code Ann. § 16–2–22(a)(2); Haw.Rev.Stat. Ann. § 702–227(2); Ill.Comp.Stat. § 5/5–4(2); Iowa Code Ann. § 703.5(2); Ky.Rev.Stat.Ann. § 502.050(1)(b); Mo.Ann.Stat. § 562.056(1); Mont.Code.Ann. § 45–2–311(1)(b); N.J.Stat. Ann. § 2C:2–7(a)(3); N.Y. (Penal) Law § 20.20(2)(b); N.D.Cent.Code § 12.1–03–02(1)(a); Ohio Rev.Code Ann. § 2901.23(A)(4); O.R.S. 161.170(1)(c); Pa. Stat.Ann. tit. 18 § 307(a)(3); Tenn.Code Ann. § 39–11–404(a)(2); Tex.Code Ann. § 7.22(b); Utah Code Ann. § 76–2–204(2); Wash.Rev. Code Ann. § 9A.08.030(2)(b).

In light of the similarity in the foregoing standards of liability, I conclude that the proper standard of corporate liability under § 13981(c) requires a showing that (1) the person who committed the gender-motivated crime of violence has final policymaking authority; (2) a final policymaker "ratified" a subordinate's unlawful conduct; or (3) a final policymaker acted with deliberate indifference to the subordinate's unlawful conduct. *See Christie,* Civ. No. 98–16547, slip op. at 5249–59. Such a standard reflects the wisdom of the Model Penal Code, but relies upon the more definitive requirements regarding final policymakers provided by federal case law.

## C. Adequacy of Complaint.

In the instant proceeding, plaintiff alleges that David Campbell was a "high managerial agent" of defendant. The term "high managerial agent" presumably is borrowed from O.R.S. 161.170(1)(c) setting forth the applicable standard of corporate criminal liability in Oregon.[11] Oregon law defines high managerial agent as "an officer of a corporation who exercises authority with respect to the formulation of corporate policy or the supervision in a managerial capacity of subordinate employees, or any other agent in a position of comparable authority." O.R.S. 161.170(2)(b); *see also* Model Penal Code 2.07(4)(c) (defining high managerial agent as an officer of a corporation or other agent "having duties of such responsibility that his conduct may fairly be assumed to represent the policy of the corporation").

I am not convinced that "final policymaker" and "high managerial agent" are sufficiently synonymous to support a finding that plaintiff has stated a claim under the standard of corporate liability adopted herein. Although the U.S. Supreme Court's consideration of state law in identifying policymakers[12] is inapplicable to non-governmental corporations, there are several "guiding principles" transferable from the § 1983 context.

First, in identifying final policymakers, courts are directed to consider whether "the official's discretionary decisions are constrained by policies not of that official's making" and whether the official's decisions are "subject to review" by the corporation's "authorized policymakers." *See Praprotnik,* 485 U.S. at 127, 108 S.Ct. 915; *Christie,* at 1236–37. Further, it is well settled that liability attaches only where the decisionmaker possesses final authority to establish corporate policy "with respect to the subject matter in question." *Pembaur,* 475 U.S. at 483, 106 S.Ct. 1292; *Hyland v. Wonder,* 117 F.3d 405, 414–16 (9th Cir.), *amended on reh'g,* 127 F.3d 1135 (9th Cir.1997), *cert. denied,* 522 U.S. 1148, 118 S.Ct. 1166, 140 L.Ed.2d 177 (1998).

■ Accordingly, in the instant case, plaintiff must allege and prove that (1) defendant Campbell has final policymaking authority with respect to corporate sexual harassment policy; (2) a final policymaker "ratified" Campbell's alleged unlawful conduct; or (3) a final policymaker acted with deliberate indifference to Campbell's alleged unlawful conduct. Because plaintiff's complaint does not include any of the foregoing allegations, Thomason Nissan's motion to dismiss plaintiff's fifth claim for relief should be granted.

## II. Defendant Campbell's Motion to Dismiss.

VAWA does not contain an express statute of limitations. Accordingly, the question presented by Campbell's motion to dismiss is whether the court should borrow the most analogous state statute of limitations or apply the four-year federal statute of limitation set forth in 28 U.S.C. § 1658.

Relying upon *Goodman v. Lukens Steel Co.,* 482 U.S. 656, 660, 107 S.Ct. 2617, 96

---

**11.** *See* Plaintiff's Opposition to Motion to Dismiss at 10.

**12.** *McMillian v. Monroe County, Alabama,* 520 U.S. 781, 786, 117 S.Ct. 1734, 138

L.Ed.2d 1 (1997); *Praprotnik,* 485 U.S. at 124–25, 108 S.Ct. 915; *Pembaur,* 475 U.S. at 483, 106 S.Ct. 1292.

L.Ed.2d 572 (1987) and *Wilson v. Garcia*, 471 U.S. 261, 266, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), Campbell argues that plaintiff's VAWA claim should be governed by Oregon's two-year personal injury statute. Those cases, invoking the rule that in the absence of a federal statute of limitations governing a federal cause of action, courts first look to the most analogous state statute of limitations, were decided prior to the enactment of 28 U.S.C. § 1658 which provides:

> Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues.

■ Under the express terms of § 1658, the federal four-year statute of limitations applies if (1) the Act of Congress in question was enacted after December 1, 1990; and (2) there is no explicit legislative directive to apply a different limitation period. VAWA was enacted on September 13, 1994. Pub.L. No. 103–322, 108 Stat. 1902 (1994). There is no explicit legislative directive that a statute of limitations other than that provided by § 1658 applies. Accordingly, I conclude that plaintiff's VAWA claim is governed by the four-year statute of limitation set forth in § 1658. *See Brzonkala v. Virginia Polytechnic Institute and State University*, 169 F.3d 820, 841 (4th Cir.1999) (citing § 1658 in support of contention that VAWA provides remedy for violent acts constituting state felonies in many instances in which such violence would not be actionable under state tort

law due to shorter state limitation periods).

I do not find the Supreme Court cases relied upon by defendant to be controlling in light of the fact that they were decided prior to the enactment of § 1658. The Supreme Court has since recognized that the presumption that Congress intended the courts to apply the most analogous state statute of limitations, in the absence of an express federal statute of limitations, "is reversed for statutes passed after December 1, 1990, the effective date of 28 U.S.C. § 1658." *North Star Steel Co. v. Thomas*, 515 U.S. 29, 34 n. 1, 115 S.Ct. 1927, 132 L.Ed.2d 27 (1995).

Similarly, although two district courts have applied state statute of limitations to VAWA claims, neither case is persuasive in light of the fact that they do not address the applicability of § 1658. *See Wesley v. Don Stein Buick, Inc.*, 42 F.Supp.2d 1192, 1197 (D.Kan.1999); *Ericson v. Syracuse Univ.*, 35 F.Supp.2d 326, 329 (S.D.N.Y. 1999). Most commentators appear to agree that the four-year limitation period provided in § 1658 governs VAWA claims. *See* David Frazee, et al., Violence Against Women Law and Litigation § 11:22 (1998); Lisa Barre–Quick & Shannon Matthew Kasley, *The Road Less Traveled: Obstacles in the Path of the Effective Use of the Civil Rights Provision of the Violence Against Women Act in the Employment Context*, 8 Seton Hall Const. L.J. 415, 431 & n. 61 (1998).

I also reject Campbell's contention that § 1658 does not apply because Congress has expressly legislated to the contrary in 42 U.S.C. § 1988(a).[13] Under the express

---

**13.** 42 U.S.C. § 1988(a) provides:

The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of *titles 13, 24, and 70 of the Revised Statutes* for the protection of all persons in the United States in their civil rights, and for their vindication, *shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect;* but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable

remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty. (Emphasis added.)

terms of § 1988(a), courts are to look to state common law only if the laws of the United States are not suitable to carry the civil rights statute into effect. *Wilson,* 471 U.S. at 267, 105 S.Ct. 1938. Unlike the facts in *Wilson* wherein there was no federal statute of limitations, § 1658 now fills the gap. Campbell has made no showing, nor can the court envision a viable claim, that a four-year statute of limitations is not suitable to carry VAWA into effect. Campbell's contention that federal law is "deficient" if the civil rights statute *itself* does not contain a statute of limitations is not supported by the language of 28 U.S.C. § 1658 or 42 U.S.C. § 1988(a).

Campbell argues that his conclusion that § 1988(a) precludes the application of § 1658 is "bolstered by the 1994 Amendments to 42 U.S.C. 1988(b), which authorized the recovery of attorneys' fees in VAWA actions." Campbell reasons that "Congress had the opportunity at that time to exempt from the scope of the VAWA the operation of subsection (a) of 1988" and "did not do so." In so arguing, however, Campbell fails to recognize that the current version of § 1988(a) is expressly limited to "titles 13, 24, and 70 of the Revised Statutes." 42 U.S.C. § 1988(a) (1994). VAWA is not included in those titles. *See* 42 U.S.C. § 1988 (1994), Historical and Statutory Notes at 131 (defining references to Titles 13, 24 and 70).[14] Hence, there was no need for Congress to "exempt" VAWA from the operation of § 1988(a).

In summary, I conclude that § 1658 provides the applicable statute of limitations governing VAWA claims in light of the fact that VAWA was enacted after December 1, 1990, and there is no explicit legislative directive to apply a different limitation period.

## CONCLUSION

Based on the foregoing, Thomason Nissan's motion to dismiss plaintiff's fifth claim for relief for failure to state a claim (# 43–1) should be granted and Campbell's motion to dismiss plaintiff's sixth claim for relief for failure to state a claim (# 59–1) should be denied. Plaintiff should be given 30 days in which to file a third amended complaint curing the deficiencies set forth above with respect to her fifth claim for relief.

Thomason Nissan's alternative motion to dismiss on the basis that VAWA is unconstitutional (# 43–2) should be DENIED AS MOOT and Campbell's alternative motion to dismiss on the basis that VAWA is unconstitutional (# 59–2) should be HELD IN ABEYANCE pending receipt of notice from the United States regarding its intent to intervene in accordance with 28 U.S.C. § 2403(a).

The Clerk of the Court is DIRECTED to send a copy of this Finding and Recommendation to United States Attorney Kristine Olson.

## SCHEDULING ORDER

The above Findings and Recommendation are referred to a United States District Judge for review. Objections, if any, are due July 23, 1999. If no objections are filed, the Findings and Recommendations will go under advisement on that date.

A party may respond to another party's objections within 10 days after service of a copy of the objection. If objections are filed, review of the Findings and Recommendation will go under advisement upon receipt of the response, or the latest date for filing a response.

---

**14.** Campbell erroneously relies upon an interpretation of *former* § 1988(a) which provided that jurisdiction in civil matters conferred on the district court *"by the provisions of this Title, and of Title "CIVIL RIGHTS," and of* *Title "CRIMES," "* shall be exercised and enforced in conformity with the laws of the United States unless those laws are not suitable. *See former* 42 U.S.C. § 1988(a) (Supp. 1994) (emphasis added).