S. S. v Rockefeller Univ. Hosp. (2025 NY Slip Op 03290)

S. S. v Rockefeller Univ. Hosp.

2025 NY Slip Op 03290

Decided on June 03, 2025

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: June 03, 2025

Before: Webber, J.P., Gesmer, Rodriguez, Higgitt, O'Neill Levy, JJ. 

Index No. 159929/23|Appeal No. 4521|Case No. 2024-03637|

[*1]S. S. et al., Plaintiffs-Appellants,
v
The Rockefeller University Hospital, Defendant-Respondent. City of New York, Amicus Curiae.

Hasapidis Law Offices, Scarsdale (Annette G. Hasapidis of counsel), for appellants.
Cohen & Gresser, LLP, New York (Mark Spatz of counsel), and Ropes & Gray LLP, Washington, DC (Douglas H. Hallward-Driemeier of the bar of the District of Columbia and Commonwealth of Massachusetts, admitted pro hac vice, of counsel), for respondent.
Muriel Goode-Trufant, Corporation Counsel, New York (Jeremy W. Shweder, Richard Dearing and Devin Slack, of counsel), for amicus curiae.

Order, Supreme Court, New York County (Dakota D. Ramseur, J.), entered on or about May 23, 2024, which granted defendant's motion to dismiss the complaint, unanimously affirmed, without costs.
From about 1966 to 1992, defendant hospital employed Dr. Reginald Archibald, a pediatric endocrinologist. The six plaintiffs are men who had been patients at the hospital as young boys, at different times between about 1966 and 1982. All plaintiffs allege that Archibald sexually abused them during medical appointments, while in examination rooms.
Plaintiffs first asserted a claim under the Victims of Gender-Motivated Violence Protection Law (VGM) (Administrative Code of City of NY §§ 10-1104, 10-1105), alleging that Archibald's conduct constituted gender-motivated crimes of violence, and defendant enabled Archibald's commission of those crimes. Plaintiffs also asserted common-law negligence and negligent hiring, retention, and supervision claims.
With respect to plaintiffs' VGM claims, the court properly concluded that the VGM did not apply retroactively (see Landgraf v USI Film Prods., 511 US 244, 264 [1994]; Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 584 [1998]). The VGM was enacted in 2000, in response to the Supreme Court's decision in United States v Morrison (529 US 598 [2000]), which struck down the Violence Against Women Act (VAWA) as an unconstitutional exercise of Congressional power (see Engelman v Rofe, 194 AD3d 26, 30 [1st Dept 2021]). The VGM created a civil rights cause of action permitting "any person claiming to be injured by a party who commits. . .a crime of violence motivated by gender" to pursue a civil claim "against such party" (Administrative Code § 10-1104). Thus, the VGM is presumed to apply only prospectively, absent a "clear expression of the legislative purpose. . . to justify a retroactive application," which may be established "by the literal language of the statute," its context and nature, and its legislative history (Gleason v Gleason, 26 NY2d 28, 36 [1970] [internal quotation marks omitted]; see also Hasan v Terrace Acquisitions II, LLC, 224 AD3d 475, 477 [1st Dept 2024]).
Here, there was no "clear expression" of the City Council "sufficient to show that the legislature contemplated the retroactive impact on substantive rights and intended that extraordinary result" (Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal, 35 NY3d 332, 370-371 [2020]). Although City Council specified that the VGM shall take effect immediately, "the meaning of the phrase is equivocal in an analysis of retroactivity" (Majewski, 91 NY2d at 583 [internal quotation marks omitted]; see also Aguaiza v Vantage Props., LLC, 69 AD3d 422, 423 [1st Dept 2010]). Other than the VGM's immediate effect, the statute contains no clear language addressing retroactivity or rebutting the presumption of prospective application.
The Committee Report reflects that the VGM was intended to not only fill the gap left [*2]by the invalidation of the VAWA but also provide victims of gender-motivated violence with additional relief, as the VGM expressly allowed recovery of attorneys' fees and costs and provided a substantially longer, seven-year statute of limitations (see Administrative Code §§ 10-1104, 10-1105; see also Ericson v Syracuse Univ., 35 F Supp 2d 326, 330 [SD NY 1999]). The City Council also added an explicit presumption that a criminal conviction constituted "conclusive proof of the underlying facts of that crime for purposes of an action brought under this chapter" (Administrative Code § 10-1106). As the VGM created a new, broader cause of action under New York law that expanded upon the protections offered by the VAWA, it did not merely clarify or reaffirm existing law (see Matter of Gleason [Michael Vee, Ltd.], 96 NY2d 117, 122 [2001]).
In 2022, the VGM was amended to permit victims of gender-motivated violence to pursue a cause of action against not only the perpetrator but also any party who "directs, enables, participates in, or conspires in the commission of a crime of violence motivated by gender" (the Abettor Provision) (Administrative Code § 10-1104). In addition, the VGM was amended to revive any claims "under this chapter" that were "barred because the applicable period of limitation has expired" (the Revival Provision) (Administrative Code § 10-1105).
The Abettor Provision created an entirely new cause of action imposing civil liability on parties who enabled gender-motivated violence, which did not exist at the time plaintiffs allege the abuse took place, so the presumption against retroactivity applies (see Matter of Regina, 35 NY3d at 370). Moreover, the Abettor Provision does not contain any text reflecting an intention to have retroactive effect (see Gottwald v Sebert, 40 NY3d 240, 258 [2023]). Although the amendment took effect immediately, the Abettor Provision was added to the VGM over 20 years after it was originally enacted (see Majewski, 91 NY2d at 583). The Abettor Provision rewrote the VGM to broaden liability by permitting plaintiffs to recover from enablers rather than only from perpetrators (see Administrative Code § 10-1102 [City Council's 2000 finding that "victims of gender-motivated violence should have a private right of action against perpetrators of offenses committed against them"]), and the sponsor's testimony does not "offer up any definitive expression that [the Abettor Provision] was intended to have unlimited retrospective application" (Matter of Thomas v Bethlehem Steel Corp., 63 NY2d 150, 154 [1984]).
As neither the original VGM nor the 2022 amendment apply retroactively, plaintiffs' asserted claims cannot be "brought under" the VGM (see Administrative Code § 10-1105). The court properly determined that the Revival Provision does not revive plaintiffs' VGM claims (see Roldan v Lewis, 2025 WL 676090, *10-11, 2025 US Dist LEXIS 37621, *30-31 [ED NY 2025]; Bensky v Indyke, 743 F Supp 3d 586, 600 [SD NY 2024]). [*3]The Revival Provision also does not revive plaintiffs' common-law negligence and negligent hiring, retention, and supervision claims. Thus, the complaint was properly dismissed.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: June 3, 2025